STATE, *ex rel.* CHARLES E. HARRINGTON, *et al.,* as Trustees of Broward County Bondholders' Association, v. CITY OF POMPANO.

188 So. 610.

En Banc.

Opinion Filed December 1, 1938.

On Rehearing March 17, 1939.

732

734

736

*Casey, Walton & Spain,* for Relator;

*W. Marion Walton, J. H. Lathero* and *McCune, Hiaasen & Fleming,* for Respondent;

*Clark & Ellis,* as *amici curiae,* and on Rehearing *Julian E. Ross, D. C. Hull, Hull, Landis & Whitehair, Robert J. Pleus, Geo. W. English, Jr.,* and *Terry Gibson* joined as *amici curiae.*

CHAPMAN, J.—This case is before the Court on a motion for a peremptory writ of mandamus, notwithstanding the answer or return of the respondent to the alternative writ of mandamus. Such a motion involves the determination of whether or not the allegations of the return or answer are sufficient to preclude the issuance of a peremptory writ of mandamus. See State v. Seaboard Air Line R. Co., 89 Fla. 419, 104 So. 602, 39 A. L. R. 1362; State v. Seaboard Air Line R. Co., 92 Fla. 1139, 111 So. 281, 735, 275 U. S. 574, 48 Sup. Ct. 17, 72 L. Ed. 434. Where the return or answer to an alternative writ of mandamus is supposed to bar the issuance of a peremptory writ, a motion for a peremptory writ, the return to the contrary notwithstanding, will be denied, and the alternative writ quashed, and the proceedings dismissed. Such a motion is the equivalent of and operates as a demurrer to the return of respondent. See State, *ex rel.* Gillespie, v. Carlton, 103 Fla. 810, 138 So. 612 Lamb v. Harrison, 91 Fla. 927, 108 So. 671. On a motion to quash the alternative writ heretofore issued, it was held by a previous order that a *prima facie* case had been made or established and that the motion to quash should be overruled and denied.

The return shows in this case that the Town of Pompano was organized by Chapter 6754, Special Acts of 1913, Laws of Florida, and contained approximately two square miles or about 1530 acres. The Town of Pompano in 1925 attempted to extend its boundaries by Ordinance annexation proceedings under the General Statutes of Florida so as to include approximately 7430 acres. The 1927 Session of

the Legislature, by Chapter 13324, Special Acts of Florida, abolished the Town of Pompano and established the City of Pompano, with an area of approximately 15,650 acres. The boundaries thereof extended approximately four miles north and south and six miles east and west, with an area of approximately twenty-four square miles.

The record shows that the City of Pompano, under Chapter 13324, Special Laws of Florida, Acts of 1927, and Chapter 13323, Laws of Florida, Special Act of 1927, issued certain bonds and coupons hereinafter described which are owned or controlled by the relators, or as trustees therefor, and each of the bonds contained the recital, viz.:

"It is hereby certified and recited that all acts, conditions and things required by the Constitution and Laws of Florida and the charter of said City to happen, exist, and be performed precedent to and in the issuance of this bond, have happened, exist and have been performed in regular and due form and time as so required; that the total indebtedness of said City, including this bond, does not exceed any constitutional or statutory limitation thereon; and that provision has been made for the levy and collection of a direct annual tax upon all taxable property in said City sufficient to meet the payment of the principal and interest of this bond as the same shall fall due."

The bonds and interest coupons held by the relators as trustees are, viz.:

| "Bonds | Numbered | Due | Amount |
|---|---|---|---|
| 5 | 46 to 50, inclusive | May 1, 1932 | $ 5,000.00 |
| 5 | 61 to 65, " | May 1, 1933 | 5,000.00 |
| 10 | 81 to 90, " | May 1, 1934 | 10,000.00 |
| 10 | 101 to 110, " | May 1, 1935 | 10,000.00 |
| 9 | 121 to 129, " | May 1, 1936 | 9,000.00 |

| | | | |
|---|---|---|---|
| 6 | 141 to 144, " | | |
| | 149 and 150, " | May 1, 1937 | 6,000.00 |
| 6 | 170 to 175, " | May 1, 1938 | 6,000.00 |
| *Coupons* | | | |
| 30 | 9 | November 1, 1930 | 900.00 |
| 264 | 10 | May 1, 1931 | 7,920.00 |
| 274 | 11 | November 1, 1931 | 8,220.00 |
| 274 | 12 | May 1, 1932 | 8,220.00 |
| 182 | 13 | November 1, 1932 | 5,460.00 |
| 256 | 14 | May 1, 1933 | 7,680.00 |
| 115 | 15 | November 1, 1933 | 3,450.00 |
| 258 | 16 | May 1, 1934 | 7,740.00 |
| 125 | 17 | November 1, 1934 | 3,750.00 |
| 245 | 18 | May 1, 1935 | 7,350.00 |
| 80 | 19 | November 1, 1935 | 2,400.00 |
| 263 | 20 | May 1, 1936 | 7,890 00 |
| 254 | 21 | November 1, 1936 | 7,620.00 |
| 254 | 22 | May 1, 1937 | 7,620.00 |
| 248 | 23 | November 1, 1937 | 7,440.00 |
| 248 | 24 | May 1, 1938 | 7,440.00 |

Total—$152,000.00"

During the year 1930 the State of Florida, on Relation of Fred H. Davis, Attorney General, as Relator, and Hillsboro Inlet Corporation, as Co-Relator, instituted a quo warranto proceeding for the purpose of testing the authority of the City of Pompano to exercise jurisdiction over the lands annexed by the Ordinances of 1925 and by Chapter 13324, Special Acts of Florida, Laws of 1927. The suit was instituted in the Circuit Court of Broward County, Florida, being contested by the respective parties, and on the 20th day of June, 1932, a final judgment was rendered and entered in said cause ousting the City of Pompano as to the entire territory included within the City limits of the Town

of Pompano, except that territory which was included in the corporate limits of the Town of Pompano prior to 1925, and forever enjoining and restraining the said city from exercising jurisdiction over the territory from which it had been ousted. On writ of error to the final judgment in quo warranto to this Court the judgment as entered by the Circuit Court of Broward County, Florida, was reversed. See State, *ex rel.* Davis, Attorney General, v. City of Pompano, 113 Fla. 246, 151 So. 485. This Court, in reversing the judgment, in part, said:

"It is needless for us to discuss the principles of law involved in this case because, as it appears to us, they have all been settled adversely to the contentions of the defendant in error in the opinions and judgments in the cases of State, *ex rel.* Davis, v. Town of Lake Placid, opinion filed April 13, 1933, reported in 147 Sou. 468, and State, *ex rel.* Davis, City of Largo, opinion filed May 2, 1933, reported in 149 Sou. 420.

"Especially is the holding of this Court in the latter case applicable here. In that case we said:

"'Undoubtedly, under the provisions of Section 8 of Article VIII of the Constitution of Florida, the Legislature has the power to establish municipalities, and to extend boundaries. But in exercising such authority it should at all times be kept in mind that the objects and purposes of such establishment or extension is to provide for an aggregation or community of people, and not simply an indiscriminate location of territory without regard for the requirements of the inhabitants. A sparsely settled area, chiefly used for groves, farms or gardens, or which is wild, unimproved, and vacant land and not needed for habitation or municipal purposes is not ordinarily within the meaning or purpose of the Constitution. A most enlightening and interesting history and analysis of this subject is given in

the opinion of Justice WHITFIELD in the case of State, *ex. rel.,* v. Avon Park, 149 Sou. 409, delivered at the present term of this Court.'"

The relators' bonds, *supra,* are dated May 1, 1926, and the legislative validation thereof was by Chapter 13324, Special Acts of 1927, Laws of Florida, and approved on April 18, 1927. Chapter 13324, Special Acts of 1927, annexing the land in question, became a law May 11, 1927, and the bonds, *supra,* were made, executed, sold and delivered on June 25, 1927, and the effect of a peremptory writ would be to levy a tax on the annexed lands to raise funds to pay the bonds of the relators, *supra,* notwithstanding the judgment in the quo warranto suit affirmed in this Court. See State, *ex rel.* Davis, Attorney General, v. City of Pompano, *supra.* The answer or return alleges that the annexed area, under Chapter 13324, Special Acts of 1927, was and is void *ab initio* because the Legislature of Florida was without power under Section 8 of Article VIII of the Constitution of 1885 to include in a municipality and to tax for municipal purposes relatively large or, excessive areas of wild or unimproved or unoccupied lands that have no fair relation to any present or potential need or convenience for reasonable growth of the municipality within a time that would fairly justify such inclusion, when the land so included and taxed can receive no benefit from the municipality. The lands annexed under Chapter 13324, *supra,* fall within the rule above stated, and in addition thereto it is sparsely settled, wild, unimproved and vacant lands and not needed for habitation or municipal purposes within the meaning of Section 8, Article VIII, *supra.* The want of power on the part of the Legislature to enact Chapter 13324, *supra,* was squarely presented in the quo warranto proceeding instituted in the Circuit Court of Broward County and affirmed by the Supreme Court of Florida and

reported in 113 Fla. 246, 151 So. 485. The annexed lands were excluded by a judgment of the Court and the City of Pompano was forever enjoined from exercising jurisdiction over the excluded area, and the relators here, by original proceedings in mandamus in this Court, seek to have this Court, when the affected land owners are not parties or represented by the issuance of a peremptory writ of mandamus, set aside the judgment affirmed in the quo warranto proceedings. See State, *ex rel.* Davis, Attorney General, v. City of Pompano, *supra*. If Chapter 13324, Special Acts of 1927, was or is unconstitutional and void for want of power under Section 8 of Article VIII of the Constitution of Florida to annex the land in question, then, under the circumstances, the peremptory writ of mandamus should be issued; otherwise denied. The proper remedy for presenting the question of the right and power of a City to exercise jurisdiction over certain lands is by quo warranto. The proceedings were in the name of State, *ex rel.* Davis, Attorney General, Relator, and Hillsboro Inlet Corporation, Co-Relator, v. City of Pompano, and it cannot be overlooked that the necessary parties were before the Court when instituted in the Circuit Court of Broward County and on a writ of error to this Court. It appears that the issues were squarely raised, presented and adjudicated and a judgment duly entered by a court of competent jurisdiction.

In the case of City of Winter Haven v. A. M. Klemm & Son, 132 Fla. 334, 181 So. 153, this Court had before it the question of the power of the Legislature to enact a statute and said:

"Where a statute establishing, or relating to, the jurisdiction and powers of a municipality, or a part of such statute, violates a command or a prohibition of the Constitution which relates, not merely to the form of the exer-

cise of the legislative power in enacting statutes, as does Section 16, Article III, but which relates to the nature or character of the subject matter of the enactment, as do Section 17, Article XII, Section 30, Article III, and Section 7, Article IX, such statute, or a severable portion thereof so violating the Constitution, may be adjudicated to be invalid and inoperative *ab initio*, and, as in such cases the invalidity of the act or the portion thereof goes to the power of the Legislature to enact the law, and not merely to the form of the enactment, no rights or correlative obligations may arise under such invalid statute or invalid portion of the statute. Such invalid statute or part of a statute could not be validated by statute or by judicial decree. See Brown v. City of Lakeland, 61 Fla. 508, 54 So. 716; Munroe v. Reeves, 71 Fla. 612, 71 So. 922; Weinberger v. Board of Public Instruction, 93 Fla. 470, 112 So. 253; Nuveen & Co. v. City of Quincy, 115 Fla. 510, 156 So. 153; 94 A. L. R. 600; State, *ex rel.* Nuveen, v. Greer, 88 Fla. 249, 102 So. 739, 37 A. L. R. 1298. * * *

"The power to establish a municipality may not lawfully be so exercised as to be an abuse of power or authority to incorporate an area where there is no resident population or where the population is so small and disproportionate to an enormously excessive area included in the boundaries, when the patently and grossly excessive area is not suitable for municipal purposes, and cannot be benefited by the municipality or its public facilities or improvements and cannot be needed for a reasonably expected growth of the municipality or the needs of the municipality. State v. City of Sarasota, 92 Fla. 563, 109 So. 473; State v. Stuart, 97 Fla. 69, 120 So. 335, A. L. R. 1307; State v. Avon Park, 108 Fla. 641, 149 So. 409; State v. Town of Lake Placid, 109 Fla. 419, 147 So. 468; State v. Pompano, 113 Fla. 246, 151 So. 485; State v. Fort Lauderdale, 102 Fla. 1019, 136

So. 889; State v. Homestead, 100 Fla. 361, 130 So. 28; State v. Largo, 110 Fla. 21, 149 So. 420; Olds v. State, 101 Fla. 218, 133 So. 641. * * *

"In the State v. L'Engle case, 40 Fla. 392, 24 So. 539; the Brown v. City of Lakeland case, 61 Fla. 508, 54 So. 716; the State, ex rel. Nuveen v. Greer case, 88 Fla. 249, 102 So. 739, 37 A. L. R. 1298; The Weinberger v. Board of Public Instruction case, 93 Fla. 470, 112 So. 253, and other like cases, the illegality of the statutes involved appeared by the face of the statutes, and the provision of the Constitution violated by the statutes related to the power of the Legislature as to the subject matter of the statutes, and did not, as here, relate merely to the *form* and manner of including the land in the city limits. * * *

"In Ocean Beach Heights v. Brown-Crummer Investment Co., Town of North Miami case, 302 U. S. 614, 58 S. Ct. 385, 82 L. Ed. 478, decided by the United States Supreme Court, January 17, 1938, the municipality was established not by statute, but by inhabitants under the general law, Section 2935 (1825) C. G. L., and there could be no *de jure* or *de facto* jurisdiction over noncontiguous lands that the inhabitants had no authority under the general law to incorporate into a *de jure* municipality. There was no statute establishing the town or defining its boundaries. Bonds were issued by the self-established town after being validated by judicial decree, and the proceeds were used by the town for municipal purposes before the noncontiguous land was adjudged to be not legally within the limits of the town. As the noncontiguous lands, that were claimed by the town and its bondholders to be in the municipal limits by action of the inhabitants of the town and not by statute, were never legally in the town and could not have been legally made a part of the town by action of its inhabitants taken under the general statutes, the noncontiguous land

was never *de jure* or *de facto* in the town limits and was never subject to the jurisdiction of the town. The citizens and taxpayers of the noncontiguous land were not parties to the suit validating the bonds because the bond validating statute makes only those within the *de jure* or *de facto* municipal limits parties to the bond validating suit; and the residents of the noncontiguous land did not appear in the bond validating suit or actively acquiesce in issuing the bonds, even if that could have made the noncontiguous land or the owners thereof liable to taxation to pay the bonds. If the municipality had been established by statute, it could have acquired *de facto* jurisdiction over the noncontiguous land if the statute had attempted to confer such jurisdiction by statute and failed, not because the Legislature had no power to include the territory, but because of a defect in enacting the statute. See Mahood v. State, 101 Fla. 1254, 133 So. 90; Weatherman v. Alta Cliff Co., 114 Fla. 305, 153 So. 845; State v. City of Cedar Keys, 122 Fla. 454, 165 So. 672; Town of Enterprise v. State, 29 Fla. 128, 10 So. 740; Duke v. Taylor, 37 Fla. 64, 67, 19 So. 172, 31 L. R. A. 484, 53 Am. St. Rep. 232; McQuillin, Municipal Corporations, 2d, 175. * * *

"In the Nuveen case, Munroe v. Reeves, 71 Fla. 612, 71 So. 922, the bond issue was validated by statute, Chapter 6095, Acts of 1909; but as the school bonds included in the issue on their face violated Article XII of the Constitution, the statutory validation was ineffectual. A statute cannot validate and make legal municipal bonds which a statute could not have authorized to be issued, the Constitution, forbidding such issue. Smith Bros. v. Williams, 100 Fla. 642, 126 So. 367; City of Daytona Beach v. King, Fla., 181 So. 1.

"The portion of the statute purporting to authorize the town to issue bonds for public free school purposes had

never been adjudicated to be constitutional; and as the statute and the bonds showed on their face that the bonds were for a purpose impliedly forbidden by Article III of the constitution, as interpreted in State, *ex rel.*, v. L'Engle, 40 Fla. 392, 24 So. 539, and Brown v. City of Lakeland, 61 Fla. 508, 54 So. 716, the school bonds issued by the town were invalid and could not be enforced as bonds of the town. See State, *ex rel.* Nuveen, v. Greer, 88 Fla. 249, 102 So. 739, 37 A. L. R. 1298, Nuveen & Co. v. City of Quincy, 115 Fla. 510, 156 So. 153, 94 A. L. R. 600."

The relators allege that authority to issue the bonds involved in this case is under Section 35 and 36 of Chapter 13324, Special Acts of 1927, Laws of Florida, becoming effective May 11, 1927. On June 25, 1927, the bonds were delivered, but were dated May 1, 1926. These Sections provide:

"Sec. 35. General Law.—That nothing in this Act shall be so construed as to alter, abolish, affect or amend any of the laws of this State now in force, or which may hereafter be enacted relative to towns and cities of the State incorporated under the general law, nor any of the ordinances of the former Town of Pompano now in force under the existing Municipal Government of the said Town of Pompano, except such as will conflict with the provisions of this Act; and all such laws and ordinances are hereby declared to be in full force and effect, and all the ordinances of said Town, and all the Acts of said Municipality and officers, employees and agents under said ordinances are hereby declared valid and legal and are ratified, approved and confirmed.

"Sec. 36. Obligations.—The City Council shall provide for the payment of all outstanding indebtedness of the Town of Pompano and all acts and transactions of said Town of Pompano and its officers, not in conflict with the

Constitution and laws of the State of Florida, together with all obligations assumed by said City, or its officers, including all issues of bonds, all assessments for the cost of municipal improvements shall be, and the same are hereby declared to be valid and of full force and effect and binding upon the City of Pompano created by this Act, and all rights of said Town of Pompano heretofore acquired shall pass to and be vested in the City of Pompano created by this Act; and the title to all property, real, personal and mixed, now belonging to the Town of Pompano, all uncollected taxes, dues, claims, judgments, decrees and choses in action shall pass to, and be vested in, the City of Pompano created by this Act."

The respondent, in paragraph 4 of the answer, which facts are admitted to be true for a hearing on a motion for a peremptory writ (See State, *ex rel.* Davis, v. A. C. L. R. Co., 97 Fla. 816, 122 So. 256), says:

"4. (a) Respondent denies that each or any of the alleged bonds was issued under authority of or in full compliance with Chapter 13324, Laws of Florida, Special Acts of 1927, and Chapter 13323, Laws of Florida, Special Acts of 1927, or by virtue of a vote of a majority of the registered voters of the said city, owning real estate herein and having paid their taxes for the year last due thereon and actually voting at an election specially called for that purpose, or by virtue of ordinances duly passed and approved and then in force, or by virtue of any election or ordinance. Respondent admits that each of the alleged bonds contains a recital substantially as alleged in the Writ, but says that said recitals were and are false, and that the truth is that the former Town of Pompano, by its Council, while a municipal corporation existing solely and only by virtue of Chapter 6754, Laws of Florida, Acts of 1913, on February 10, 1926, passed an ordinance for calling and holding a

special election on March 16, 1926, for the purpose of determining whether interest-bearing municipal coupon bonds in the total sum of $750,000.00 should be issued, to be dated May 1, 1926, to bear interest at the rate of 6% per annum, payable semi-annually over a period of not exceeding thirty years, and to provide for levying and collecting an annual tax upon all taxable property then in the said Town of Pompano to pay the interest and to establish a sinking fund for redemption of said bonds at maturity, and providing that only the qualified freeholders then residing within the then existing corporate limits of said Town should be allowed to vote in such election, and that the proceeds of such bonds should be used in the laying of sewers, installing the water system and for the construction of streets and sidewalks within the then existing corporate limits of said Town; that notice of such election was published in the Pompano News on February 19th and 26th, 1926, and on no other dates; that such election was held in the said former Town of Pompano on March 16, 1926, at which election only the qualified electors of said town who were freeholders residing in its corporate limits were permitted to vote, and at which election a majority of ballots were cast for the issuance of such bonds, as canvassed by the Council of said Town of Pompano on March 17, 1926; that the Council of said Town of Pompano on March 18, 1926, adopted a further ordinance for the issuance of such bonds in the total sum of $750,000.00 in denominations of $1000.00 each, to bear date of May 1st, 1926, two hundred and fifty of which bonds should become due twenty years after date, two hundred and fifty should become due twenty-five years after date, and two hundred and fifty should become due thirty years after said date, with interest at the rate of 6% per annum, payable semi-annually on November 1st and May 1st of each year, payable at the Bank

of Pompano, Pompano, Florida; that said ordinance fixed and prescribed the form of said bonds and interest coupons as set forth in and copied from said ordiance, in the form hereto attached, marked 'Exhibit A' and 'Exhibit A 1,' and made a part of this Return; that on July 6th, 1926, the Council of said former Town adopted another ordinance repealing said ordinance of March 18, 1926, and on July 6th, 1926, adopted another ordinance for the issuance of bonds pursuant to said election, in the total amount of $750,000.00, in denominations of $1000.00 each, to bear interest at 6% per annum, payable semi-annually on May 1st and November 1st of each year, at some bank or trust company in the City of New York, and changing the maturity dates of the proposed bonds, and providing for the levy and collection of an annual tax upon all taxable property within the then existing corporate limits of said Town, to pay such bonds and interest coupons, and providing that all details and characteristics of said bonds, as well as the form thereof and the manner of execution should be thereafter determined by the Town Council of said Town of Pompano. Respondent further shows that none of said bonds or interest coupons to be issued therewith was ever signed, executed, issued, sold or delivered, and that no other election was held or notice given of the issuance of such bonds or any bonds; that by Chapter 13323, Laws of Florida, Special Acts of 1927, it was attempted to authorize the issuance of such bonds in the principal sum of $375,000.00, and to fix the maturity dates and place of payment of such bonds, and to provide for an annual tax to pay the same; that said Act recited the validation of such bonds by a decree of the Circuit Court, but respondent denies that such bonds, or any of them, were in fact or in law so validated, and denies specifically that any of the bonds which attempt was made to authorize by Chapter 13323 was validated, and

denies that any of the alleged bonds described in the Writ in this case was validated in any manner by Court Decree or Act of the Legislature, and respondent shows that said Chapter 13323 became effective April 18th, 1927, in respect only to contemplated bonds of said Town of Pompano, yet, nevertheless, that none of the 'bonds provided for or attempted to be provided for by said Act was ever signed, executed, issued, sold or delivered, and particularly that no bonds were issued between said April 18, 1927, and May 11, 1927.

"(b) Respondent further shows, as alleged in the Writ herein, that said Town of Pompano was abolished by Chapter 13324, Special Laws of Florida, Acts of 1927, which became effective May 11th, 1927; that by said Act the respondent, City of Pompano, was created and established; that said Act required the City of Pompano to provide for the payment of outstanding indebtedness of the Town of. Pompano, and ratified said Town's obligations, including certain other bonds issued prior to May 16th, 1926, and not involved in this case, and vested in respondent title to the property of the Town of Pompano, and provided that nothing therein should be construed to alter or abolish the Ordinances of the Town of Pompano, except such as would conflict with said Act; and respondent shows that when said Chapter 13324 became effective on May 11th, 1927, no bond or writing in the form of a bond, or interest coupon, as provided for and prescribed in the Ordinance of the Town of Pompano, or in Chapter 13323, aforesaid, or in the form described and alleged in the Writ herein as held by the Relators, had ever been signed, executed, sold, issued or delivered, and that no indebtedness or obligation of the Town of Pompano, or of respondent, then and has ever existed in such form or on account thereof.

"(c) Respondent shows further that said Chapter 13324, Laws of Florida, Acts of 1927, which was and is the municipal charter and governing law of respondent, the City of Pompano, permitted said City to issue bonds for specified purposes, but Section 45 of said Act provided that before such bonds should be issued, the issuance thereof should be approved by an affirmative vote of a majority of the electors of said City voting for such purpose at an election to be regulated by ordinance, and after advertisement of such election for not less than thirty days in a newspaper, at which election only qualified electors of said City who should then own real estate therein and who should have paid the taxes thereon last due should be allowed to vote, thus changing the qualifications of electors from the qualifications of electors of the former Town of Pompano; and said Act in Section 48 required such bonds before sale to be advertised for two successive weeks in a newspaper, and respondent shows that said requirements were not followed or complied with, but to the contrary the writings in the form of bonds and interest coupons allegedly held by the relators herein in truth and in fact were signed, executed, sold and delivered on or about June 25th, 1927, as alleged in the Writ herein, and not before, that they were executed by the officers of the respondent, City of Pompano, and were sealed with its corporate seal, the testimonium clause and manner of execution in said bonds being as follows:

" 'IN WITNESS WHEREOF said City of Pompano has caused this bond to be signed by the Mayor and countersigned by the President of the Council and attested by the City Clerk, and the official seal of said City to be hereto affixed, and the annexed interest coupons to be executed with the facsimile signature of said City Clerk, all as of the first

day of May, 1926, but actually on a date subsequent to May 11, 1927.

" 'JOHN O. COOK, Mayor

" 'ATTEST:

" 'Countersigned:

" 'T. E. RAINES                    W. H. McNAB
      City Clerk.                    President of the Council.

" '(SEAL OF THE CITY OF POMPANO)'

"Said bonds not even being executed in the name of the City of Pompano; said bonds being entitled 'Municipal Improvement Bonds, City of Pompano,' and were otherwise in different form even from the bonds theretofore authorized or purported authorized to be issued by the Town of Pompano, but not in fact issued, that no election whatever was held in the City of Pompano to approve or disapprove the issuance of said bonds nor any notice published of the proposed issuance thereof, or of the alleged interest coupons, and that the Minutes and Records of respondent City of Pompano did not at the time of the actual execution and delivery of the purported bonds held by relators herein, or ever, contain any record or recital of the holding of any such election or giving of such notice; wherefore, the recitals in the writings described in the Writ herein were and are false, besides being in the form of mere conclusions, and the said writings, although in the form of bonds and interest coupons, were and are null and void and of no effect, and all purchasers thereof including the relators herein, were charged with and had notice thereof."

If, as alleged in the above quoted answer, Chapter 13324, *supra,* became a law on May 11, 1927, and the bonds now before the Court were dated May 1, 1926, and delivered on June 25, 1927, it would be necessary for the City Council

of Pompano to prepare and adopt an ordinance or resolution calling for an election and to advertise the same for a period of thirty days prior to holding an election thereon in a newspaper published in the City of Pompano, as required by Section 45 of Chapter 13324, *supra*. When a validation proceeding is desired in conformity with Sections 5106, 5107, and 5108 C. G. L., additional time is required, and Section 48 of Chapter 13324 requires that the offer of sale of bonds be made after the same have been approved or validated. It is difficult to understand how these many legal requirements were complied with by the City of Pompano within the forty-five days from May 11, 1927, to June 25, 1927, the date of the alleged sale of the bonds. Even a *bona fide* holder of a municipal bond is bound to show legislative authority in the issuing body to create the bond. Recitals on the face of the bond or acts *in pais*, operating by way of estoppel, may cure irregularities in the execution of a statutory power, but they can not create it. If the legislative authority is wanting, the bond has no validity. See Hayes v. Holly Springs, 114 U. S. 120, 29 L. Ed. 81, 5 Sup. Ct. 785.

Likewise the case of Barnett v. Denison, 145 U. S. 135, 12 Sup. Ct. 819, 36 L. Ed. 652, held that a purchaser or holder of a municipal bond is chargeable with notice of the requirements of the law under which they are issued. The exact language is:

"It is the settled doctrine of this court that municipal corporations are merely agents of the state government for local purposes, and possess only such powers as are expressly given, or implied, because essential to carry into effect such as are expressly granted; 1 Dill. Mun. Corp., Section 89; Ottawa v. Carey, 108 U. S. 110; that the bonds of such corporations are void unless there be express or implied authority to issue them; Wells v. Supervisors, 102

U. S. 625; Claiborne County v. Brooks, 111 U. S. 400; Concord v. Robinson, 121 U. S. 165; Kelley v. Milan, 127 U. S. 139; that the provisions of the statute authorizing them must be strictly pursued; and that the purchaser or holder of such bonds is chargeable with notice of the requirements of the law under which they are issued. Ogden v. County of Daviess, 102 U. S. 634; Marsh v. Fulton County, 10 Wall, 676; South Ottaway v. Perkins, 94 U. S. 260; Northern Bank v. Porter Township, 110 U. S. 608; Hayes v. Holly Springs, 114 U. S. 120; Merchants' Bank v. Bergen County, 115 U. S. 384; Harshman v. Knox County, 122 U. S. 306; Coler v. Cleburne, 131 U. S. 162; Lake County v. Graham, 130 U. S. 674."

In McQuillin on Municipal Corporations (2nd Ed.) Revised Vol. 6, par. 2511, page 293, it is said: "Want of Power to Issue. It is a defense even as against *bona fide* holders, that the bonds are *ultra vires,* i. e., that the municipality had no implied or expressed authority to issue bonds for the particular purpose. So a repeal of the enabling statute before the issuance of the bonds is a defense, but a subsequent repeal is no defense. Likewise, it is a defense, even as against *bona fide* holders, that the statute authorizing the issuance of the bonds is unconstitutional. On the other hand it is no defense that a further sale and delivery of the bond issue had been enjoined."

We are unable to extend the doctrine of *de jure* and of *de facto* municipal jurisdiction and powers to the case at bar because the City of Pompano was without power, as now appears from the record, to issue the bonds here involved. See Brown v. City of Lakeland, 61 Fla. 508, 51 So. 716; Munroe v. Reeves, 71 Fla. 612, 71 So. 922; Weinberger v. Board of Public Instruction, 93 Fla. 470, 112 So. 253; Nuveen & Co. v. City of Quincy, 115 Fla. 510, 156 So. 153, 94 A. L. R. 600; State, *ex rel.* Nuveen, v. Greer, 88 Fla.

249, 102 So. 739; 37 A. L. 1298; State, *ex rel.* Davis, v. City of Pompano, *supra.*

The motion on the part of the relators for a peremptory writ, the return to the contrary notwithstanding, is hereby denied.

TERRELL, C. J., and BUFORD, J., concur.

WHITFIELD, J., concurs specially.

BROWN, J., concurs in the conclusion.

WHITFIELD, J., (concurring specially) —This is a proceeding in mandamus brought by the bondholders to compel municipal taxation of all taxable property including homesteads in the city limits as defined by Chapter 13324, Acts of 1927, to pay general obligation bonds issued by the City of Pompano under charter authority before a judgment of ouster in quo warranto excluded the jurisdiction of the city from a large area annexed to the original municipality by Chapter 13324, State, *ex rel.,* v. City of Pompano, 113 Fla. 246, 151 So. 485. The judgment of ouster is upon the ground that the added area was sparsely settled and not needed for habitation or municipal purposes, and that Chapter 13324 is invalid insofar as it added such area to the city limits, such addition of rural lands, being an abuse and excess of legislative power under Section 8, Article VIII, of the Constitution. The adjudged partial invalidity of Chapter 13324 was not because the form of the statute violated Section 16, Article III of the Constitution, as did Chapter 11301 in City of Winter Haven v. Klemm, 132 Fla. 334, 181 So. 153, relied on by counsel for both parties.

The above cited Klemm case was a suit, not by a bondholder, but by a citizen taxpayer to enjoin municipal taxation of plaintiff's *described land* to pay municipal bonds that were issued and used for municipal purposes before the *de jure* municipal jurisdiction of the city under a

statute, was ousted by quo warranto judgment from an area, not covered by the title of the Act, that had been annexed to the city limits by statute. Such excluded area embraced plaintiff's described land, and some of the improvements made by the use of the bond money being in the area including plaintiff's land. The nature and location of the plaintiff's land making it incapable of receiving any benefit whatever by being included in the municipality, was not a ground for, affirming the ouster judgment. State, ex rel., v. City of Winter Haven, 114 Fla. 199, 154 So. 700. The plaintiff in the Klemm case in effect contended that the judgment of ouster relieved his land of all municipal taxation whether the ousted municipal jurisdiction was *de jure* or *de facto*.

In the Klemm case and in this case the quo warranto judgments having reference to future, not past, municipal jurisdiction and authority, ousted the municipalities from *de jure* jurisdiction of the added areas; but such judgments did not affect the valid bond obligations of the cities incurred upon the faith of the entire taxable statutory areas including the taxable added lands; nor did such ouster judgments affect the authority to tax lands that were within the *de facto* municipal jurisdiction of the cities prior to the ouster judgments, *if the lands could lawfully be subjected* to such taxation under the *de facto* jurisdiction of the cities without violating organic property rights. If any or all of the lands covered by the judgments of ouster are of such a nature and so located that neither the lands nor the owners thereof can receive any benefit whatever from being incorporated in the municipal limits, and the owners of the lands have not by waiver, estoppel or otherwise lost their right to resist municipal taxation under *de facto* jurisdiction and authority, the land may be excluded from such taxation by due course of legal proceedings, when such

taxation would in effect deprive the owners of the lands of their property rights therein without due process of law in violation of the State and Federal Constitutions.

In State, ex rel., v. Town of Holly Hill, 128 Fla. 385, 174 So. 818, the improperly added territory was *by statute* eliminated from the town limits; and it was there said:

"There is no suggestion * * * that the portion (of the lands) eliminated was not proportionately benefitted with the present town."

In City of Winter Haven v. Klenn, 132 Fla. 334, 181 So. 153, the prima facie *de jure* jurisdiction of the city and its officers was *by quo warranto judgment* ousted from the illegally added rural lands; and the opinion stated (page 163):

"The bill of complaint seeks relief upon the ground that plaintiff's land was never legally within the city limits, and not upon the ground that plaintiff's land has not received and cannot receive any possible benefits from the municipality or from its public improvements, as in City of Sarasota v. Skillin, 130 Fla. 724, 178 So. 837; State v. City of Avon Park, 108 Fla. 641, 149 So. 409."

The injunction suit of a taxpayer in the Klemm case failed because it was based upon an ouster judgment which did not affect bond obligations legally incurred by the *de jure* municipality in exercising *de facto* jurisdiction over plaintiff's land, the statute in that case being held to be defective in form under Section 16, Article III, Constitution. In this case the statutory provision adding the excessive area to the municipality was held to be an abuse and excess of the power conferred and limited by the intendments of Section 8, Article VIII of the State Constitution. In the Klemm case there was a defective exercise of power conferred, in that the title of the Act violated Section 16, Article III, of the Constitution. See also State, *ex rel.*, v.

City of Hollywood, 130 Fla. 364, 178 So. 412. In this case there was an ineffectual exercise of power in excess of that conferred by the intendments of the Constitution. In each case the statute was prima facie and presumptively valid, and conferred at least *de facto* and prima facie *de jure* municipal jurisdiction over the lands until the prima facie *de jure jurisdiction* and authority of the cities were subsequently ousted by quo warranto judgments. Thereafter there could be no *de jure* jurisdiction of the cities over the lands covered by the judgments of ouster as long as the ouster judgments were effective.

In this case and in the Klemm case the statutory enactment was ·prima facie and presumptively valid, since the legislature has power to incorporate lands into a municipality, though in doing so, Section 16, Article III, of the Constitution should be complied with in framing the title of an Act; and the area limitation intendments of Section 8, Article VIII, of the Constitution, may be violated by the inclusion in the municipal limits of excessive areas of rural lands that are not needed or suitable for municipal purposes and that can receive no benefit whatever from being so included. Such status of prima facie validity of the statutes conferred prima facie *de jure* jurisdiction over the added lands, continued until the ouster judgments, covering improperly added areas of wild land, were rendered.

If a statutory provision prescribing the territorial boundaries of a municipality does not clearly show by its express terms a legislative intent to violate the Constitution, but the enactment does include in a municipal limits vastly excessive areas of rural lands that are unsuited and not needed for present or reasonably prospective municipal purposes, and no compensating benefits of any nature or kind whatever accrues to the land or its owners in municipal governmental service or protection, or in public improve-

ments or otherwise, such unwarranted statutory inclusion of large areas of lands in a municipality may be ascertained or adjudged to be an abuse and excess of legislative authority under Section 8, Article VIII, of the Constitution; and the prima facie *de jure* municipal jurisdiction and authority over the lands or the excessive portions thereof may by appropriate action be ousted by judicial judgment, or the land may be withdrawn from the prima facie *de jure* jurisdiction of the municipality by statute. See State v. City of Largo, 110 Fla. 21, 149 So. 420.

Where municipal jurisdiction is legally withdrawn from vastly excessive areas that were incorporated by statute in a *de jure* municipality, there may be *de facto* municipal jurisdiction in such a *de jure* municipality to tax all or a part of the excluded areas to pay proportionately for duly authorized municipal bonds duly issued for authorized municipal purposes and sold to bona fide purchasers while the excessive areas were, by virtue of a presumptively valid statute, *prima facie* within the *de jure* jurisdiction of a *de jure* municipality. However, where such *de facto* municipal jurisdiction to so tax is asserted by the city or by bona fide bondholders, and such *de facto* jurisdiction is contested by, or for the benefit of, the owners of the excluded lands, as being an unconstitutional denial of due process and equal protection of the laws, because such lands or the owners thereof had received no possible benefit by the lands being so incorporated, it should be duly shown that the bonds are valid and that a tax on the lands to pay the bonds was duly authorized when the lands were *de facto* in the city limits; and also in enforcing a *de facto* municipal jurisdiction or authority to tax lands and to afford due process of law, it should be duly shown that the land to be taxed or its owners severally received or reasonably could have received *some substantial* benefit in governmental

protection, municipal service or privileges, public improvements or otherwise, by the lands being incorporated in the municipality; unless the land owners severally by waiver, estoppel or otherwise, have lost their inalienable rights to possess and protect the lands against governmental taxation or other burdens except by due process of law and without a denial of the equal protection of the laws, as guaranteed by Sections 1 and 12, Declaration of Rights, State Constitution, and the Fourteenth Amendment to the Federal Constitution. It seems therefore that after the prima facie *de jure* municipal jurisdiction is duly withdrawn from areas not properly included in a municipality, the city officials are not *per se* the representatives of the owners of such excluded lands, and that when the *de facto* municipal jurisdiction or authority to tax the excluded lands is contested, such owners should be duly made defendants by representation or otherwise, in an appropriate judicial proceeding instituted to enforce the tax.

Section 4, Declaration of Rights, provides that:

"All courts in this State shall be open so that every person for any injury done him in his lands, goods, person or reputation 'shall have remedy, by due course of law, and right and justice shall be administered without sale, denial or delay."

Under the quoted organic provisions, it is the duty of the courts to administer right and justice *by due course of law* to the city, to taxpayers and to the creditors of the city, as their respective rights may be made to appear under the law interpreted according to the mandates of the supreme law of the land.

As the statute showed in the Klemm case, so the statute here considered, Chapter 13324, Acts of 1927, showed an intent to include the entire area described in the statutory boundaries of the City of Pompano; but at that time the

limits of the legislative power in incorporating land areas in a municipality under the provisions of Section 8, Article VIII of the Constitution, had not been authoritatively determined as has since been done in numerous decisions of this court in the exercise of the judicial power vested in it by the Constitution of Florida. State, *ex rel.,* v. City of Sarasota, 92 Fla. 563, 109 So. 473; State, *ex rel.,* v. City of Stuart, 97 Fla. 69, 120 So. 335; 64 A. L. R. 1307; State, *ex rel.,* v. City of Eau Gallie, 99 Fla. 579, 126 So. 124; State, *ex rel.,* v. City of Avon Park, 108 Fla. 641, 149 So. 409; State, *ex rel.,* v. Town of Lake Placid, 109 Fla. 419, 147 So. 469; Town of Boynton v. State, 103 Fla. 1113, 138 So. 639; State, *ex rel.,* v. Town of Boynton Beach, 129 Fla. 528, 177 So. 327.

There is nothing in Chapter 13324 to indicate a legislative *intent to violate* the limitation intendments of Section 8, Article VIII, as to the areas that may lawfully be incorporated in municipal limits, or to violate any other provision of the State or Federal Constitution.

This being so, there may be *de facto* municipal jurisdiction and authority in the City of Pompano, as incorporated by Chapter 13324, to tax the excluded lands for proper and lawful purposes under the express authority given by the charter Act to issue the bonds and to pay them by taxation of all taxable property in the city as defined in the prima facie valid provision of the statute when the bonds were duly issued for authorized municipal purposes. But as it is *de facto* municipal jurisdiction and authority to tax that is relied on, it should be made to appear, in order not to deprive the land owners of their property rights therein without due process of law, that the lands to be taxed or their owners were or could reasonably have been substantially benefitted by the municipal government or by its public improvements or otherwise, or it shoud be duly shown

that the land owners have, under the law, by waiver, estoppel or otherwise, severally lost their rights to contest the validity of the municipal taxes to be imposed upon the lands of the owners severally that are covered by the ouster judgment.

If the municipality be abolished, the Constitution requires that "provision shall be made for the protection of its creditors." See Humphreys v. State, 108 Fla. 92, 145 So. 858.

As the lands are shown to be not now legally within the city limits, city officials may not be such representatives of the land owners as to bind them through mandamus proceedings to compel the officials, in the exercise of *de facto* municipal jurisdiction, to perform official duties, when the liability of the excluded lands or their owners, for the tax sought to be enforced, has not been judicially determined, it not appearing that such asserted *de facto* jurisdiction and consequent authority to tax is conceded by such landowners.

In City of Winter Haven v. Klemm, *supra*, it was said:
"If under Section 8, Article VIII, of the Constitution a statute embraces in the boundaries of a municipality land that cannot be taxed for municipal purposes without violating some provision or principle of organic law, that matter may be determined in appropriate judicial proceedings, so that 'by due course of law' 'right and justice shall be administered' by the 'courts in this State.' Sec. 4, Decl. Rts." See City of Sarasota v. Skillin, 130 Fla. 724, 178 So. 837 (2) ; State v. City of Avon Park, 108 Fla. 641, 149 So. 409; State v. Town of Holly Hill, 128 Fla. 385, 174 So. 818; Town of Boynton Beach v. State, 108 Fla. 92, 145 So. 858; City of Coral Gables v. State, 129 Fla. 834, 177 So. 290.

It has also been held that: "A writ of mandamus will

not be advertised when it is evident that substantial rights or parties not before the Court are involved." State v. Richards (H. N. 3) 50 Fla. 284, 39 So. 152.

By the addition of rural lands the municipal limits of Pompano were increased from 1,530 acres to 15,650 acres. According to the official census the population of the Town of Pompano in 1925 was 1,750; that of the City of Pompano in 1930 was 2,614; in 1935, 2,309. The ouster proceedings were begun in 1930, and the ouster judgment was ordered in 1933. State, *ex rel.*, v. Pompano, 113 Fla. 246, 151 So. 485.

While the alternative writ contains general allegations of facts showing that appreciable municipal services were rendered to the added area generally, the answer avers that there were "few houses and few inhabitants" in the very large added area. Such averment and others as made in the answer may fairly be regarded as sufficient on the record *in this action* to require the relators who ask for a peremptory writ to make sufficient allegations of fact to show a right of the relators and a duty of the respondent city officials to impose the tax prayed for on *all* the lands covered by the judgment of ouster and by the commands of the writ. Taxpayers are not parties, even if they legally can be made parties, in this action by representation or otherwise so that their rights may be adequately represented in a binding adjudication. This is particularly so when, as here, the judgment of ouster *apparently* makes it at least inappropriate that the city officials should be regarded as being duly authorized to represent the property owners in the ousted area in defending their rights under the *de facto* jurisdiction or authority of the municipality as asserted. The statute in this case was not defective in form merely, but in its provisions including the ousted area within the city limits; and the answer is largely predicated upon the

contention that the judgment of ouster relieves the lands covered by the judgment from taxation by *de facto* as well as *de jure* municipal jurisdiction and authority; but this contention is not shown to be valid, though the alternative writ be insufficient as a predicate for a peremptory writ in this case.

It is not sufficiently alleged that all the land or its owners in the added area were benefitted by the lands being included in the municipality; nor is it alleged specifically that each and *all* of such owners have by waiver, estoppel or otherwise lost their respective rights to defend against the tax under the *de facto* jurisdiction or authority of the city, even if such general allegations would be sufficient in this mandamus action against the city officials, with bondholders as relators and no taxpayer a party to the action by representation or otherwise, and the organic rights of the land owners are involved.

The relators in this mandamus action do not show as against the answer that *all* the lands from which the prima facie *de jure* municipal jurisdiction of the City of Pompano had been ousted, are legally subject to the bond obligations of the *de jure* municipality which were incurred while in the exercise of its *de facto* jurisdiction over the illegally annexed lands so as to duly make this mandamus applicable to *all* of the improperly annexed lands. There is no legal presumption that such lands are so liable, when, as in this case, the ouster judgment was predicated upon a finding that the annexation of the immense area of rural lands to the existing relatively small municipality was an abuse and excess of legislative power rendering the annexation provision inoperative because violative of the area intendments of Section 8, Article VIII, of the Florida Constitution. Mandamus requires a clear showing of a legal right of the relator, a commensurate duty of the respondent, and the

absence of another adequate remedy. State, *ex rel.* Ellis, Atty. Genl., v. A. C. L. R. R. Co., 53 Fla. 650, 44 So. 213, 13 L. R. A. (N. S.) 320, 12 Ann. Cas. 359; State v. Green, 88 Fla. 249, 102 So. 739, 37 A. L. R. 1298. And mandamus is not appropriate when rights of other parties are not duly represented. See State v. Richards, 50 Fla. 284, 39 So. 152. If mandamus is the proper remedy on the facts shown in this case, it should be clearly shown that *all* the lands covered by the writ are legally subject to the tax sought to be enforced, and that the tax can be enforced without denying due process of law, upon the theory that the lands or their owners received some compensating benefits for the tax, or that the owners of the lands have waived their rights to contest the collection of the tax. And proper parties should be made.

"Taxable property" for general municipal bond payment purposes, does not include property exempted from taxation by law for governmental purposes; nor does such "taxable property" include property exempted from taxation by law for other than governmental purposes, when the exemption is in force at the time municipal bonds are issued. Lands which have been legally excluded from municipal jurisdiction cannot be taxed for municipal purposes without denying to the owners thereof due process or equal protection of the laws, when the lands have not received and cannot receive any possible benefit by having been included in the municipality. Such unbenefitted excluded lands are not subject to the *de facto* jurisdiction or authority of the municipality for taxation purposes against a duly asserted valid objection predicated upon the due process clause of organic law, unless the land owners by waiver or estoppel or otherwise, have lost their rights to defend. If lands over which a municipality may otherwise have *de facto* jurisdiction are so located and conditioned that they

cannot be taxed for general bond obligations of the municipality without violating organic rights of the owners, such lands may not in law be "taxable" for payment of such bonds; and the law affords a remedy unless the owners of the lands have by waiver, estoppel or otherwise, lost their rights to a remedy. See Sec. 4, Declaration of Rights, Fla. Constitution. No question of special assessments is involved here.

In a Florida case reported as Ocean Beach Heights, Inc., v. Brown-Crummer Inv. Co., 302 U. S. 614, 58 Sup. Ct. 385, 82 L. Ed. 478, there was a community of residents on the west side of a wide bay called Biscayne Bay. In establishing a town by their own action under Section 2935 (1825) *et seq.,* C. G. L., such residents attempted, *in violation of law,* to include in the town limits land on the east side of the Bay which was non-contiguous to the lands incorporated by such residents on the west side of the Bay. As such residents on the west side of the Bay *had no authority whatever* to include two distinct detached tracts of land or noncontiguous lands on the east side of the Bay in the town limits, there could not have been *any de jure* municipal jurisdiction or authority over the lands on the east side of the Bay; and where there could have been no *de jure* municipal jurisdiction or authority, there can be no *de facto* jurisdiction or authority of the town to tax lands on the east side of the Bay to pay bonds of the town which existed only on the west side of the Bay, there having been no statute incorporating or authorizing the incorporation of the lands on the east side of the Bay into the town limits. "In the absence of a law authorizing the creation of a municipality *de jure,* there can be none *de facto.*" Ocean Beach case cited above.

In this case, as in the Klemm case, the areas of rural lands were added to the city limits by a statute which was

presumptively valid until otherwise duly adjudicated by quo warranto judgment, therefore there may be *de facto* jurisdiction and authority in this case if the required conditions are duly shown to exist. State v. City of Cedar Keys, 122 Fla. 454, 165 So. 672; City of Winter Haven v. Klemm, 132 Fla. 334, 181 So. 153; State v. Town of Holly Hill, 128 Fla. 385, 174 So. 818.

When municipal bonds are duly authorized by statute and no organic limitation is violated in issuing the bonds, and statements contained in the bonds authorized to be issued, are to the effect that all applicable laws or regulations were complied with in issuing the bonds, such statements in the bonds may be binding as to the validity of the bonds owned bona fide for value, unless such statements in the bonds are negatived by other provisions or statements in the bonds or in the record required by law to be made and kept of the official proceedings necessary to be had in issuing the bonds. But if municipal bonds are not duly authorized by statute, statements in the bonds that the law was complied with in issuing the bonds will not confer authority to issue the bonds, and if such bonds are not duly authorized, they would be *unenforceable as bonds* even in the hands of *bona fide* holders for value.

Judicial decrees made under the statute in validating municipal bonds do not confer authority to issue the bonds, and may not be binding as to the validity of statutory provisions incorporating a municipality or defining its territorial limits and its jurisdiction, unless perhaps such enactments may lawfully be put in issue and adjudicated in the validating proceedings. See West v. Town of Lake Placid, 97 Fla. 127, 120 So. 361. Judicial decrees validating municipal bonds under the statute are conclusive as to the validity of the bonds adjudicated, unless there was no competent authority for issuing the bonds, or unless it

is shown by the validation proceedings or by the bonds or by the record required by law to be made and kept of the proceedings had in issuing the bonds, that some provision of organic law was violated in issuing the bonds. See State, *ex rel.* Rodgers, 125 Fla. 423, 170 So. 113; State, *ex rel.,* v. Thomas, 125 Fla. 274, 169 So. 684; A. C. L. Ry. Co. v. City of Lakeland, 130 Fla. 72, 177 So. 206.

It is not shown in this case that the validating decree is not conclusive as to the validity of the bonds in controversy here. As to what constitutes *res adjudicata* see Stoll v. Gollick, decided by the Supreme Court of the United States November 21, 1938.

The Circuit Courts of Florida have general equity jurisdiction under Section 11, Article V of the Constitution; and, in a bond validation proceeding made equitable in its nature by the statute, Sections 5106 (3296) *et seq.,* C. G. L., the prescribed proceedings must be substantially complied with. When the required petition has been filed and the proper court order has been made against the State of Florida requiring it through the State Attorney to show cause said bonds should not be validated and confirmed, and a copy of such petition and order have been duly served on the State Attorney, and the Clerk of the Circuit Court has duly published a notice addressed to the taxpayers and citizens of the municipality, requiring them to appear to the validating proceedings as stated in the statute, then it is provided that:

"By the publication of said notice, all taxpayers and citizens of such county, municipality, taxing district, or other political district or subdivision shall be considered as parties defendant to said proceedings, and the court shall have jurisdiction of them the same as if they were named as defendants in said petition and personally served with process." Sec. 5107 (3298) C. G. L.

And after a reasonable and fair hearing or opportunity to be heard by all parties on the issues made, has been accorded by the court, and a final decree is rendered by the court validating and confirming the issuance of municipal bonds, then

"In the event no appeal is taken within the time prescribed herein, or if taken, and the decree validating said bonds * * * is affirmed by the Supreme Court, the decree of the circuit court validating and confirming the issuance of the bonds * * * shall be forever conclusive as to the validity of said bonds * * * against the municipality * * * issuing them, and against all taxpayers and citizens thereof; and the validity of said bonds or certificates shall never be called in question in any court in this State." Sec. 5109 (3299) C. G. L.

See State v. Henderson, 130 Fla. 288, 177 So. 539; State v. City of Cedar Keys, 122 Fla. 454, 165 So. 672.

"Bonds or certificates, when issued under the provisions of this Article, shall have stamped or written thereon by the proper officers of such county, municipality, taxing district or other political district or subdivision issuing the same, the words:

'Validated and confirmed by decree of the circuit court' (specifying the date when such decree was rendered and the court in which it was rendered), which shall be signed by the clerk of the circuit court in which the decree was rendered, which entry shall be original evidence of said decree in any court in this State." Sec. 5110 (3300) C. G. L.

The purpose of the statute, Sections 5106 (3296) *et seq.*, C. G. L., providing for judicial validations of *bona fide* issues of *duly authorized* governmental bonds and certificates of indebtedness, is to facilitate bona fide sales of valid *duly authorized* bonds and certificates by means of authorized

judicial decrees conclusively adjudicating the validity of such *duly authorized* bonds and certificates as issued, unless it appears by statute or by the bonds or certificates, or by the duly required record of the validating proceedings or by the record duly required to be made and kept of the advertisement, election or other proceedings required for issuing such duly authorized bonds or certificates, that some express or implied command, prohibition or limitation of the State or Federal *Constitution* was violated in validating or in issuing such *duly authorized* governmental bonds or certificates of indebtedness. State, *ex rel.* Nuveen, v. Greer, 88 Fla. 249, 102 So. 739, 37 A. L. R. 1298; Weinberger v. Bd. Pub. Inst., 93 Fla. 470, 112 So. 523; Brown v. City of Lakeland, 61 Fla. 508, 54 So. 716.

Section 6, Article IX of the Florida Constitution as amended in 1930 provides that:

"The Legislature shall have power to provide for issuing State bonds only for the purpose of repelling invasion or suppressing insurrection, and the Counties, Districts or Municipalities of the State of Florida shall have power to issue bonds only after the same shall have been approved by a majority of the votes case in an election in which a majority of the freeholders who are qualified electors residing in such Counties, Districts, or Municipalities shall participate, to be held in the manner to be prescribed by law; but the provisions of this Act shall not apply to the refunding of bonds issued exclusively for the purpose of refunding of the bonds or the interest thereon of such Counties, Districts, or Municipalities."

See Advisory Opinion, 94 Fla. 967, 114 So. 850; State v. City of Miami, 100 Fla. 1388, 131 So. 143; Nolle v. Brevard County, 100 Fla. 1692, 131 So. 776; Sullivan v. City of Tampa, 101 Fla. 298, 134 So. 211; Savage v. B. P. I. 101 Fla. 1362, 133 So. 341; State v. Special Tax School Dist.,

107 Fla. 93, 144 So. 356; Scholtz v. McCord, 112 Fla. 248, 150 So. 234; State v. Citrus County, 116 Fla. 676, 157 So. 4; Folks v. Marion County, 121 Fla. 17, 163 So. 298; Board Pub. Instr. v. State, 121 Fla. 703, 164 So. 697; Leon County v. State, 122 Fla. 505, 165 So. 666; State v. City of Pensacola, 123 Fla. 331, 166 So. 851; Hopkins v. Baldwin, 123 Fla. 649, 167 So. 677; Brash v. State Tuberculosis Bd., 124 Fla. 167, 167 So. 827; and 124 Fla. 652, 169 So. 218; Kathleen C. L. Co. v. City of Lakeland, 124 Fla. 659, 169 So. 356; Williams v. Town of Dunnellon, 125 Fla. 114, 169 So. 631; State v. Calhoun County, 125 Fla. 263, 169 So. 673; State v. Calhoun County, 126 Fla. 376, 170 So. 883; Broward C. P. A. v. State, 129 Fla. 73, 175 So. 796; Board Pub. Inst. v. State, 130 Fla. 366, 177 So. 615. See also Secs. 11 and 17, Art. XII Florida Constitution; State v. L'Engle, 40 Fla. 392, 24 So. 539; Brown v. City of Lakeland, 61 Fla. 508, 54 So. 716.

Chapter 13324, Acts of 1927, in effect continued the municipality of "Town of Pompano" under the name, "City of Pompano." After duly authorized bonds have been validated by judicial decree not reversed, and the bonds have been issued for value, questions as to due advertisements and other matters of procedure are foreclosed by the validating decree. Bd. Pub. Inst. v. State, *ex rel.* Tanger Investment Co., 121 Fla. 703, 164 So. 697; Bd. Pub. Inst. v. State, *ex rel.* Tanger Inv. Co., 121 Fla. 176, 163 So. 694; State v. Henderson, 130 Fla. 288, 177 So. 539.

The effect of the quo warranto judgment of ouster was to adjudge an abuse of legislative power in annexing great areas of rural lands to a small municipality, not an adjudication that there were no lands in the areas covered by the ouster judgment that could under the *de facto* jurisdiction of the *de jure* City of Pompano be taxed for general bond obligations of the municipality incurred for municipal

benefits to the land or its owners while the lands were by the *prima facie* and presumptively valid statute annexed to the municipality. And under the law such taxes may be enforced against lands that are legally "taxable;" if such enforcement does not deprive the owners of their property rights in the lands without due process of law, or otherwise violate the State and Federal Constitutions.

The relators here were not parties to the quo warranto proceedings and they now in effect claim a right in this action against the city and its officials to enforce taxation of the ousted lands along with the others now legally in the city, to pay bonds issued by the city for municipal purposes prior to the ouster judgment; and allege that municipal benefits were extended into the annexed areas. But this is a mandamus action seeking to compel *as an official duty,* the taxation of *all* the improperly annexed lands, without making a clear and sufficient showing, if it can be done in this action, that all the lands covered by the ouster judgment and the writ, are in fact and in law subject to such taxation under the *de facto* jurisdiction of the *de jure* municipality. The showing here made does not justify the issuance of a peremptory writ of mandamus commanding the city officials to tax *all* the lands covered by the writ to pay the municipal bonds, even though the bonds be not shown to be invalid.

The above statements are not in conflict with the decision in State v. City of Cedar Keys, 122 Fla. 454, 165 So. 672, on the record in that case, the judgment of ouster there being based on the indefiniteness of the city boundaries, no question of large areas of rural land having been improperly annexed to the city limits being there involved. The principle of law here discussed as to remedy by mandamus was not considered in any of the Lake Placid cases, or other similar cases of *de facto* municipal jurisdiction.

Under Section 8, Article VIII, of the Florida Constitution above quoted, the legislature has "power to establish, and to abolish, municipalities, to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time." The stated legislative power includes power to prescribe the territorial area of municipalities. If the limitation intendments of the organic section above quoted are exceeded or the stated legislative power is abused in enacting a statute including within the limits of a municipality vast areas of wild lands unsuited and not needed for municipal purposes, and such areas are so included only for the purposes of municipal taxation without any present or prospective compensating benefits of any nature to the lands or to their owners, such statute, if duly enacted, will be presumptively valid until duly adjudged to be invalid in whole or in part because of the improper inclusion of such vast areas of wild lands in the municipal limits. A quo warranto judgment may oust the municipality of its *prima facie* and presumptively *de jure* jurisdiction over lands adjudged to have been illegally included in a municipality; but there may be *de facto* jurisdiction over the lands covered by the quo warranto judgment of ouster if the circumstances of the case authorize the application of the doctrine of *de facto* jurisdiction and authority. Such a *de facto* jurisdiction is recognized in the jurisprudence of this State. Town of Lake Placid v., West, 97 Fla. 127, 120 So. 361. See 181 So. 158; 115 Fla. 259. But it cannot operate to deprive anyone of property rights without due course of law, whether by taxation or otherwise.

When by quo warranto judgment the presumptive *de jure* jurisdiction and authority of a *de jure* municipality over lands improperly included *by statute* in municipal limits has been ousted, and such ouster is adjudged because

of the invalidity of the enactment under Section 8, Article VIII of the Florida Constitution, and the ouster judgment does not duly adjudge that *none* of the lands covered by the ouster judgment can be taxed under any *de facto* jurisdiction and authority of the municipality, because such taxation would deprive the owners of the lands of their property rights therein without due process of law, resulting from the lack of any benefit whatever to the lands or their owners, to compensate for the tax sought to be imposed under *de facto* municipal jurisdiction, such question of taxation of the lands without due process of law may be adjudicated by due course of law in appropriate judicial proceedings under Section 4, Declaration of Rights, above quoted.

In order to duly subject such excluded lands to municipal taxation under the doctrine of *de facto* municipal jurisdiction and authority of a *de jure* municipality, it should be clearly shown in appropriate judicial proceedings with proper parties, that either the lands included in the municipality by a presumptively valid statute and covered by an ouster judgment and sought to be taxed under *de facto* municipal jurisdiction and authority, or the owners of such lands, have received or could reasonably receive some substantial benefits of governmental protection, public improvements or otherwise, by reason of having been included within the *statutory* limits of the municipality, or that the owners of the lands have in some lawful way lost their rights to contest such taxation under *de facto* municipal jurisdiction and authority. Otherwise such municipal taxation might operate to deprive the owners of the lands of their property rights therein without due process of law in violation of Sections 1 and 12, Declaration of Rights, Florida Constitution, and the Fourteenth Amendment to the Federal Constitution. Violations of such property

rights may be remedied by due course of law in appropriate judicial proceedings under Section 4 of the Declaration of Rights. See Henderson v. Town of Lake Placid, 132 Fla. 190, 181 So. 177.

A peremptory writ of mandamus should not be issued on this record.

BROWN and BUFORD, J. J., concur.

## ON REHEARING.

### Division A.

BUFORD, J.—This cause is before us on rehearing granted pursuant to the rendition of our opinion and judgment rendered and entered herein on December 1st, 1938.

The factual conditions are fully set out in the opinion, *supra,* but we concede that the statement in that opinion, viz.: "The record shows that the City of Pompano, under Chapter 13324, Special Laws of Florida, Acts of 1927, and Chapter 13323, Laws of Florida, Special Acts of 1927, issued certain bonds and coupons hereinafter described which are owned or controlled by the relators, or as trustees therefor," does not go far enough because the issuance of the bonds was authorized under the provisions of Chapter 6754, Acts of 1913.

The bonds recite on the face thereof:

"This bond is one of a series issued by said City for the purpose of laying sewers, installing an adequate water works system and constructing streets and sidewalks, all within and for said City, under the authority of and. in full compliance with an Act approved.by the Governor on May 11, 1927, known as House Bill No. 489, being the Charter of said City, and another Act approved by the Governor on April 18, 1927, known as House Bill No. 127, and by virtue of the vote of a majority of the registered voters of said

City owning real estate therein and having paid their taxes for the year last due thereon and actually voting at an election specially called for that purpose and ordinances duly passed and approved and now in force."

The certificate of validation appearing on the bond is as follows:

"Validated and confirmed by decree of the Circuit Court of the Fifteenth Judicial Circuit in and for Broward County, Florida, rendered on September 25, 1926.

FRANK A. BRYAN,
"Clerk of the Circuit Court."

So the certificate shows that the issuance of the bonds was validated prior to the legislative Acts of 1927, *supra,* and, therefore, were not dependent exclusively upon those Acts for validity.

Chapter 13323, Special Acts of 1927, was an Act entitled:

"An Act providing for the issuance of $375,000 bonds of the Town of POMPANO, the same being a portion of $750,000 bonds which have been authorized and validated, and cancelling the authority to issue the remainder of said bonds."

This Act provided:

"Be it Enacted by the Legislature of the State of Florida:

"Section 1. That the Town Council of the Town of Pompano be and the same is hereby authorized to issue at one time or from time to time that portion of the bonds above described, aggregating $375,000, which mature as follows: $5,000 1931 to 1933, $10,000 1934 to 1939, $15,000 1940 to 1947 and $20,000 1948 to 1956, all inclusive, and that said Town shall not be allowed to issue any bonds pursuant to the said Election except the $375,000 bonds herein authorized to be issued.

"Sec. 2. That the Clerk of the Circuit Court of the Fifteenth Judicial Circuit in and for Broward County shall

not certify the validation by said Court of any bonds authorized at said election, except the $375,000 bonds authorized by Section 1 of this Act.

"Sec. 3.  That in each year while any of said bonds are outstanding there shall be levied and collected upon all taxable property within said Town a sufficient tax to pay the interest falling due in the ensuing year upon said bonds, and sufficient also to maintain a sinking fund for the payment of each and all of said bonds as the same fall due.

"Sec. 4.  That this Act shall take effect upon its becoming a law.

"Approved April 18, 1927."

Chapter 13324, Special Acts of 1927, was an Act entitled:

"An Act to abolish the present municipality of Town of POMPANO, in Broward County, Florida: to create and establish a new municipality to be known as City of Pompano, in Broward County, Florida: to legalize and validate the ordinances of said Town of Pompano and official acts thereunder, and to adopt the same as the ordinances of said City of Pompano: to prescribe the time within which suits shall be brought against said city and for notice thereof: to fix and provide the territorial limits, jurisdiction and powers of said City of Pompano, in Broward County, Florida, and the jurisdiction and powers of its officers."

Sections 35 and 36 of this Act provide as follows:

"Sec. 35.  *General Law.*  That nothing in this Act shall be so construed as to alter, abolish, affect or amend any of the laws of this State now in force, or which may be hereafter enacted relative to towns and cities of the State incorporated under the general law, nor any of the ordinances of the former Town of Pompano now in force under the existing Municipal Government of the said Town of Pompano, except such as will conflict with the provisions of this

Act and all such laws and ordinances are hereby declared to be in full force and effect, and all the ordinances of said Town, and all the Acts of said Municipality and officers, employees and agents under said ordinances are hereby declared valid and legal and are ratified, approved and confirmed.

Sec. 36. *Obligations.* The city council shall provide for the payment of all outstanding indebtedness of the Town of Pompano; and all acts and transactions of said Town of Pompano and its offices, not in conflict with the Constitution and laws of the State of Florida, together with all obligations assumed by the said City, or its officers, including all issues of bonds, all assessments for the cost of municipal improvements shall be and the same are hereby declared to be valid and of full force and effect and binding upon the City of Pompano created by this Act, and all rights of the said Town of Pompano heretofore acquired shall pass to and be vested in the City of Pompano created by this Act; and the title to all property, real, personal and mixed now belonging to the Town of Pompano, all uncollected taxes, dues, claims, judgments, decrees and choses in action shall pass to, and be vested in, the City of Pompano created by this Act."

One of the rights and powers which passed to the City of Pompano was the right and power to consummate the issuance of the bonds which had been authorized by the duly enacted ordinances of the Town of Pompano insofar as the Town of Pompano could have carried out that issuance if it had remained as it was.

In other words, there was a continuation of all the powers and duties which had been acquired or imposed by law and legal action on the Town of Pompano to be met and discharged by the newly created corporation the City of Pompano. Broughton v. Pensacola, 93 U. S. 266, 23 L. Ed. 896;

Stokes v. Montgomery, 203 Ala. 307, 86 Southern 663; Amy v. Selma, 77 Ala. 103; Black v. Fishburn, 84 S. C. 451, 66 S. E. 681; Girard v. Philadelphia, 7 Wall. 1, 19 L. Ed. 53; Morgan v. Beloit, 74 U. S. 613; 19 L. Ed. 203; Shapleigh v. San 'Angelo, 167 U. S. 646, 17 Sup. Ct. 957, 42 L. Ed. 310.

We are confronted with the further fact, however, that Section 45 of Chapter 13324, Acts of 1927 provides as follows:

"Sec. 45. *Bonds.* Whenever it shall be deemed advisable to issue bonds for any purpose or purposes hereinafter named for raising money to be used in constructing, maintaining or purchasing waterworks; for the purpose of constructing, maintaining or purchasing gas or electric light works, or other illuminating systems; for the purpose of constructing, maintaining or purchasing a system of sewerage; or otherwise promoting the health of said municipality; or for the purpose of opening, constructing, repairing and maintaining the streets and sidewalks of said municipality, or for the purpose of opening, constructing and maintaining public parks and promenades; or for the purpose of erecting school houses and maintaining a system of public education in said municipality; for the purpose of establishing and maintaining a fire department in said municipality; for the purpose of erecting public building for the use of said municipality; for the purpose of refunding any indebtedness of said City; for the purpose of constructing sea-walls along the water fronts of said city; for the purpose of constructing, repairing or maintaining municipal docks; for the purpose of filling in any lot or submerged land in said city; for the purpose of constructing, repairing or maintaining bridges, bulkheads and causeways; or for any other municipal purpose, the Mayor and City Council are hereby authorized to issue bonds of said municipality, and under the seal of said corporation, to an amount of not exceeding twenty

per cent of the assessed valuation of all the property, both real and personal within said city, as shown by the assessment roll, said bonds to be signed by the Mayor, countersigned by the President of the Council, and attested by the Clerk, with interest coupons attached; provided, however, that before said bonds shall be issued the issuance of said bonds shall be approved by an affirmative vote of a majority of the electors voting for such purpose separately or collectively at an election to be held for such purpose or purposes, which election shall be regulated by ordinance as to the manner of conducting and certifying the same, after the same has been advertised for not less than thirty days in a newspaper published in said City of Pompano, or in some newspaper published in Broward County, Florida, and at which election only qualified electors of said City who own real estate in said City, and who have paid the taxes thereon last due, shall be allowed to vote at said election."

Therefore, without complying with the provisions of this Section, there was no authority in the City Commission to pledge the tax on the additional territory included within the City of Pompano by the provisions of Chapter 13324, *supra,* without the approval by an affirmative vote of a majority of the electors in the added area voting in an election held for that purpose.

So it is that we conclude that the bonds constitute the valid and binding obligation of the municipality as it existed at the time the election was held authorizing the issuance of such bonds at the time of the validating decree by the Circuit Court. But, as it appears that the attempt of the Legislature to add a great area to the territorial jurisdiction of the municipality was invalid, the bonds never became a charge against property in the territory so attempted to be added.

This case is to be distinguished from those cases wherein it has been held that bonds issued by a municipality might be

held to be a charge against property included within a defacto municipal corporation at the time of the issuance and validation of the bonds, for the reason pointed out above, that in this case the issuance of the bonds was authorized by the Town of Pompano and the bonds were validated as the valid and binding obligation of the Town of Pompano, though actually thereafter issued under the power vested in the Town of Pompano, by its succeeding corporation, the City of Pompano, which power and authority could under the terms of the statutes involved, *supra,* bind no more than could have been bound by its predecessor the Town of Pompano. The effort here is not to require the tax to be levied upon only that territory which was chargeable with the bond issue involved, but it is to require a levy of tax over all that area included by the legislative Act, Chapter 13324, *supra,* and as this relief is not available, the motion for peremptory writ, notwithstanding the return, must be denied and the cause dismissed.

It is so ordered.

TERRELL, C. J., and THOMAS, J., concur.

WHITFIELD, P. J., concurs in denying peremptory writ of mandamus.

CHAPMAN, J., agrees to the conclusion.

BROWN, J., dissents.

WHITFIELD, J.—Upon the relation of municipal bondholders this court issued an alternative writ of mandamus requiring the City of Pompano to assess and levy taxes upon all the taxable property within the city limits under Chapter 13324, Acts of 1927, including the lands from which the jurisdiction of the city had been ousted by quo warranto judgment in 1934, State, *ex rel.* Att'y-Gen'l v. City of Pompano, 113 Fla. 246, 151 So. 485. The writ requires the tax to be sufficient to pay relator's matured bonds and the inter-

est coupons thereon, or to show cause, etc. A motion to quash the alternative writ was denied. State, *ex rel.* Harrington, *et al.*, v. City of Pompano, 132 Fla. 830, 182 So. 290. A return or answer to the writ was filed by the city, which, considered with the alternative writ and the record in the quo warranto case made a part of the return by reference, indicates that organic property rights of landowners in the areas covered by the ouster judgment are involved in this proceeding. Such owners are not parties to this action. A motion of the relators for a peremptory writ notwithstanding the return was denied in opinions filed December 1, 1938.

A re-argument was granted.

It is alleged and denied that the bonds are valid.

Municipalities in Florida exist only by virtue of the Constitution and statutes duly enacted pursuant to the Constitution and within the limitations imposed by the Constitution. The jurisdiction and authority of municipality are under the Constitution not inherent, but are only those that are delegated and prescribed by law; therefore authority of law must appear for the issuance of municipal bonds; and if the bonds are to be paid by taxation, authority to impose the tax and the subjects of the tax must appear in the law.

Section 8, Article VIII of the Constitution expressly provides that "the legislature shall have power to establish and to abolish municipalities" and "to prescribe their jurisdiction and powers." Such organic section requires "the jurisdiction and powers" of municipalities to be *prescribed* by statute.

By Chapter 6754, Acts of 1913, and Chapter 9876, Acts of 1923, the Town of Pompano was authorized to issue bonds for public improvements and to levy a tax upon all the taxable property in the town to pay the bonds.

Chapter 13323, Acts of 1927, effective April 18, 1927, authorized the Town Council of the Town of Pompano to issue $375,000.00 of public improvements bonds, the same being a portion of $750,000.00 of bonds which, as stated in the Act, has been authorized "pursuant to an election held on March 16, 1926," and which bonds had "been validated by a decree of the Circuit Court of the Fifteenth Judicial Circuit of Florida in and for Broward County." Chapter 13324, effective May 11, 1927, abolished the Town of Pompano and "created and established to succeed such former municipality of Town of Pompano in Broward County, Florida," a new municipality to be known as City of Pompano," with "all the powers and privileges given to such municipal corporations under the general laws of the State of Florida," and with all the laws, ordinances, rights and privileges of the abolished town, not in conflict with the laws of the State, and with added powers and authority including the issuing of public improvement bonds and the levy of taxes to pay the bonds. And said Act provided that the City Council should provide for the payment of all outstanding indebtedness of the town and declared its obligations, including all issues of bonds, to be valid and binding upon the City. The bonds here sued on are within the amount authorized by Chapter 13323, recite full compliance with Chapters 13323 and 13324, and certify that all requirements of law had been performed. They are dated May 1, 1926, when the Town of Pompano was in existence, and were delivered June 25, 1927, as being issued by the *City*, after the City of Pompano was established as the successor to the Town of Pompano. Both the town and the city had authority to issue such bonds, and no lack of good faith is alleged. On this record the bonds are valid.

Relators claim a right to have *de facto* municipal juris-

diction exerted to tax lands from which *de jure* jurisdiction of the city has been legally excluded.

The doctrine of *de facto* municipal jurisdiction is not of constitutional or statutory origin. It is a product of judicial development, and may be adjudged and applied by the courts in proper cases to conserve contract rights of municipal bondholders, where it does not violate organic property rights of landowners who have not lost their rights to contest taxation to pay the bonds under *de facto* municipal jurisdiction.

In this case the bonds were by Chapter 13323, effective April 18, 1927, specifically authorized to be issued by the *Town*; and by Chapter 13324, effective May 11, 1927, the City was established and given the same authority the *Town* had. The bonds were delivered by the *City* while all the lands covered by Chapter 13324 were *prima facie* in the city limits; the bond contract obligation is by the *city;* and the statute, Chapter 13324, authorizes, and the bonds pledge, all the taxable property in the *City* to be taxed to pay the bonds. Chapter 13324 did not repeal Chapter 13323, and did not limit the taxing authority of the City relative to the lands added to the municipality, as in Hayes v. Walker, 54 Fla. 163, 44 So. 747, under Chapter 5857, Acts of 1907. See also State v. Miami, 103 Fla. 5, 137 So. 261. The city now has *de jure* jurisdiction over, and authority to tax, only the lands that were within the *Town* limits before Chapter 13324 became effective. If *de facto* municipal jurisdiction may exist to tax lands that were illegally in the city limits when the bonds were issued, but have been legally excluded from municipal jurisdiction, such *de facto* jurisdiction must be adjudicated in appropriate proceedings with proper parties. See City of Winter Haven v. Klemm, 132 Fla. 334, 181 So. 153. See also Geweke v. Village of Niles, 368 Ill. 463, 14

N. E. (2d) 482, 117 A. L. R. 262; State, *ex rel.,* v. Town of Boynton Beach, 129 Fla. 528, 177 So. 327.

The quo warranto judgment of ouster in this case covered all the lands added to the municipality by Chapter 13324, Acts of 1927, as being incorporated in violation of Section 8, Article VIII of the Constitution. State, *ex rel.* Davis, v. City of Pompano, 113 Fla. 246, 151 So. 485. Such judgment of ouster not merely cover described parcels of land owned by the co-relator in the quo warranto case, as being incorporated, in the city in violation of the organic property rights of the owners of such illegally incorporated lands. See State, *ex rel.,* v. City of Avon Park, 108 Fla. 641, 149 So. 409; State, *ex rel.,* v. Town of Boca Raton, 129 Fla. 673, 177 So. 293; City of Coral Gables v. State, 129 Fla. 834, 177 So. 290; State, *ex rel.,* v. Town of Boynton Beach, 129 Fla. 528, 177 So. 327; State, *ex rel.,* v. City of Coral Gables, 120 Fla. 492, 163 So. 308.

Where asserted organic rights of municipal bondholders conflict with asserted organic rights of property owners to resist alleged illegal or unjust taxation to pay municipal bonds, courts of competent jurisdiction may determine which party has the better claim to enforce its asserted organic rights. See City of Winter Haven v. Gillespie, 84 Fed. (2d) 285.

Mandamus is a discretionary writ, which when issued should be enforced upon equitable principles so that justice may be administered within the law, in cases where there is a defined or duly ascertained official or corporate duty which the relator has a right to require the respondent to perform, and there is no other adequate remedy, and the rights of third parties entitled to be heard are not involved. See State, *ex rel.,* v. Carey, 121 Fla. 515, 164 So. 199; State, *ex rel.,* v. Greer, 88 Fla. 249, 102 So. 739, 37 A. L. R. 1298; State, *ex rel.,* v. A. C. L. R. R. Co., 53 Fla. 650, 44 So. 213,

13 L. R. A. (N. S.) 320, 12 Ann. Cas. 359; State v. Richards, 50 Fla. 284, 39 So. 152; Duncan Townsite Co. v. Lane, 245 U. S. 308, 62 L. Ed. 309, 38 Sup. Ct. 99; State, *ex rel.*, v. City of St. Petersburg, 126 Fla. 233, 170 So. 730.

The official acts commanded by the alternative writ to be performed by the respondent city are not shown by the allegations of the alternative writ considered with the return, to be official or corporate duties prescribed or duly ascertained, which the relators have a right to have enforced by a peremptory writ of mandamus.

I concur in denying a peremptory writ of mandamus on the record in this cause.

Brown, J., (dissenting in part, and concurring in part)— I concur in most of the foregoing opinion, but not in the latter portion nor in conclusion reached. I do not see how the question of benefits to properties of individuals situated in the excluded area can be adjudicated in this proceeding. This is a mandamus proceeding brought against the City to compel it to comply with its contract obligation to levy taxes for the payment of these bonds. The property owners are not parties to this suit; the awarding of the peremptory writ will not prevent them from asserting any rights they have to contest the validity of any taxes that may be levied by the City. Any lands, which were excluded in the quo warranto proceeding, which, under the principles laid down in our previous decisions were not, and are not, benefitted by inclusion within the limits fixed by the legislature in the 1927 Act, and which for any valid reason cannot be taxed to pay these bonds, may in proper proceedings by the owners, be relieved of any tax which might be levied against them in violation of this constitutional rights. But the City is bound by its contract, and under our previous decisions the bondholders are entitled to have the city carry out its contracts. On the basis of this record as it now exists, I think the per-

emptory writ against the city should be awarded. This seems to be clearly settled by our previous decisions; among them being Henderson v. Town of Lake Placid, 132 Fla. 190; 181 So. 177; and City of Winter Haven v. Klemm, 132 Fla. 334, 181 So. 153.