## STATE ex rel. BOARD OF ED., TOWN OF SALINA, OKLA., v. WILLIAMSON. Atty. Gen.

No. 28371. Feb. 15, 1938.

A. N. Murphey; for plaintiff.

Mac Q. Williamson, Atty. Gen., and Stephen D. Holloway, Asst. Atty. Gen., for defendant.

GIBSON, J. The Attorney General has declined to approve an issue of bonds voted by the school district of the town of Salina, giving as his reason therefor that the issue violates section 26 of article 10 of the Constitution, in that the proposed bonds will with existing indebtedness be in excess of "five per centum of the valuation of the taxable property therein, to be ascertained from the last assessment for state and county purposes previous to the incurring of such indebtedness." The relator seeks writ of mandamus to compel him to do so.

The Attorney General construes the quoted clause to refer to the valuation of the taxable property against which taxes can be levied for general county purposes, thereby excluding from the valuation the amounts deducted for homestead exemptions. If his view is correct, the writ here should be denied, for admittedly, with this net valuation as a yardstick, the bonds are in part excessive; therefore the whole proposed issue should be disapproved. Board of Education v. Short, 89 Okla. 2, 213 P. 857.

The question presented is new. Each side asserts that no case directly in point has been found. This is so because of the newness of the homestead exemption law. Some analogy may be drawn from past practice as to personal property. It is not questioned that the net assessment of personal property — that is, as its value is extended on the tax rolls after deducting the personal exemption—has been the valuation used and not the full listed value. There would seem to be no difference in principle in deducting homestead exemption valuations from the real estate values and in deducting the "heads of families" exemptions provided by section 12319, O. S. 1931. But the practice of exclusion of such personal exemptions from the assessed valuation measure will not control unless it has been based upon the law.

In Minnesota it was provided that the limit of the net indebtedness of the city of Minneapolis was 10 per cent. of the last assessed value of all taxable property therein. Minnesota had passed a law providing that for certain classes of property the assessment should be at only certain percentages of the true value. It was contended in a case which reached that state's Supreme Court that the 10 per cent. should be applied to the assessment as returned, and not to the assessment as finally made. That court said:

"After the passage of the classification statute, the duty still devolved upon the assessor to list all property at its true and full value, and also to list in a separate column, the value for taxation purposes by use of the respective percentages indicated

above. The tax was computed at the proper rate upon the amounts listed in the latter column. * * *

"It is contended by the defendants that, as now found in our laws, the words 'assessed value' and 'assessed valuation' mean 'true and full value.' With this contention we cannot agree. The words, as aptly stated by the trial court, are 'phrases of contrast and not identity.' The language of the classification act itself forces such a conclusion. We therefore hold that the valuations upon which the ten per cent. net indebtedness are to be applied and computed are the amounts contained in the second column above referred to as **finally equalized and determined.** We think this holding is inescapable." (Emphasis ours.) Phelps v. City of Minneapolis (Minn.) 219 N. W. 872.

At one time in Missouri, property of railroads was not taxable for school building purposes, although otherwise taxable. A school district voted bonds under a constitutional provision substantially identical with our own, and asserted said bonds were legal, because the property of the railroad, assessable and taxable for other purposes, should be included in the assessment valuation upon which the percentage of indebtedness could be computed. In that case, Thornburgh v. School Dist. No. 3, 75 S. W. 81. the Supreme Court of Missouri considered the language of the Constitution, and declared that the valuation must be that ascertained after the deduction of this exempt property. The court said:

"* * * It has been decided by this court that, at the date these bonds were issued, railroad property was not taxable for the purpose of raising money with which to pay for a schoolhouse (State ex rel. v. Wabash Ry., 83 Mo. 395), and counsel for appellant concede that to be the law. But the learned counsel argue that, whilst railroad property was not taxable for this purpose, it was nevertheless to be taken into account in estimating the extent to which the board might go in incurring indebtedness for this purpose, because, by the terms of the Constitution, the assessment named as the basis of the calculation is 'the assessment next before the last assessment for state and county purposes.' The clause of the Constitution under discussion is not aimed at school districts alone, but its language is: 'No county, city, town, township, school district or other political corporation or subdivision of the state shall be allowed to become indebted.' etc. No distinction is made between any of these political corporations named, in respect of the subject. The same ratio between the value of the taxable property and the tax to be levied is prescribed for all alike, in one group. If we should give to the words 'assessment for state and county purposes,' in this clause, the meaning that appellant's counsel think they should have, then we should have a school district empowered to become indebted to a greater degree than 5 per cent. of the property liable to be taxed for its payment, while a county, city, town, or township had no such power. The plain purpose of the Constitution is to forbid the incurring of a public debt beyond **a certain per centum of the value of the property taxable for its payment.** That purpose must not be lost sight of in interpreting any doubtful words in the clause. The language is not that the corporation shall not incur indebtedness exceeding 5 per centum of the value of property within its territorial limits subject to taxation for state and county purposes, but it is that it shall not incur such indebtedness 'exceeding five per centum on the value of the taxable property therein.' **Then it specifies the source from which information as to that value is to be obtained: that is, the official assessment for state and county purposes.** If the clause under discussion had simply forbidden the school district to incur indebtedness 'exceeding five per centum on the value of the taxable property therein,' without further demonstration, it would have left open the question of how that value was to be ascertained, and in that event the board of directors could have ordered an assessment for that purpose. But the lawmakers were unwilling to leave it in that condition, and therefore they pointed out the standard by which the valuation was to be ascertained. to wit, **the official assessment for state and county taxation.** The words 'for state and county purposes,' in that clause. are merely descriptive of the official document to which reference is made. * * *" (Emphasis ours.)

In a prior case (State v. Kansas City, St. J. & C. B. R. Co., 22 S. W. 611), the same court held that, although merchants' property was taxable as a special group, its valuation did not enter into the computation because it was not a part of the property forming the equalized assessment, "the last annual assessment for state and county purposes." The court said:

"'An assessment, strictly speaking, is an official estimate of the sums which are to constitute the basis of an apportionment of a tax between the individual subjects of taxation within the district. * * * As the word is more commonly employed, an assessment consists in two processes,—of listing the persons, property, etc.. to be taxed. and of estimating the sums which are to be the guide to an apportionment of the tax between them.' Cooley, Taxn. 351. Under the law general levies are most generally made upon an assessment by the value of the property as it appears from the assess-

or's books. The tax of merchants and dramshop keepers, although they are required to pay an ad valorem tax on their stock in trade, is in the nature of a license tax, and the property upon which the taxes are thus paid do not go into and form a part of the general wealth of the county, within the meaning of the revenue laws **upon which taxes are levied for revenue purposes.** No such property is listed by the assessor."

In St. Louis-San Francisco Ry. Co. v. Hendrickson, 128 Okla. 266, 263 P. 148, this court quoted with approval from an Iowa case, McPherson v. Foster Bros. (Iowa) 22 Am. Rep. 215, which construed an identical constitutional provision. There the court referred to the assessment as the "last tax list." This indicates that the assessment list as the list against which taxes are generally levied is meant.

A footnote to paragraph 207, Dillon on Municipal Corporations (5th Ed.), is cited by the school board, as well as the last sentence of said paragraph, referring to Windsor v. Des Moines, 110 Iowa, 175, to the effect:

"But when the basis of the limitation is the value of the taxable property within the city 'to be ascertained by the last **state and county lists,'** and these lists include all the property in the city limits, whether taxable for city purposes or not, the limitation is not to be based solely on the property subject to taxation for city purposes."

The cited Iowa case states this:

"Plaintiff contends that the indebtedness is limited to 5 per centum of the property subject to taxation for city purposes. We cannot agree with him in this contention. The state and county tax lists include all property in the corporate limits, whether taxable for city purposes or not."

What the court means is readily seen, however, when it is considered that, at the time of that decision at least, certain cities in Iowa had the power to assess, levy, and enforce taxes independently of the state or county. See Dennison v. Keokuk, 45 Iowa, 266. And from the statement of the case in State ex rel. v. City of Des Moines (Iowa) 65 N. W. 818, it appears that Des Moines was such a city of the class exercising "the rights and functions of a city government, including the levy and collection of taxes." Hence there was a distinction between the assessment list as made by the county officials for "state and county purposes" and that made by the city for city purposes.

In the note referred to are cited three cases involving bonds issued by the town of Darlington, S. C., for railroad construction: Germania Sav. Bank v. Darlington, 50 S. C. 337; Atlantic Trust Co. v. Town of Darlington (C. C.) 63 Fed. 76; Town of Darlington v. Atlantic Trust Co. (C. C. A.) 68 Fed. 849. The question arose there as to whether the assessed value of a manufacturing company's property should be included in computing the limitation of indebtedness, as at that particular time the law provided for a refund of taxes paid by the company. In each of the three cases, however, the distinction is made clear, between exempting property and refunding taxes on property assessed, and by inference the decisions are against the school board's contention here.

In Bank v. Darlington, 50 S. C. 337, the trial court held that the valuation of the manufacturing company's property should be included, because the property was assessable and taxable and **was not exempt from taxation.** This view was upheld by the Supreme Court. In Atlantic Trust Co. v. Town of Darlington, 63 Fed. 76, the federal circuit court said:

"Was the property of the Darlington Manufacturing Company properly included in the assessed value of all taxable property in the town? It was, **unless it was legally exempt from assessment and taxation.** * * * But the law does not attempt to exempt corporations like this * * * from assessment and taxation. Section 169, subd. 23, of the general statutes, requires the property of such companies to be assessed and taxed, and the tax to be paid, and then authorizes its return in whole or part." (Emphasis ours.)

On appeal, the case was affirmed by the Circuit Court of Appeals. In the syllabus of the appellate decision (68 Fed. 849) it is said:

"A statute providing that a large part of the taxes paid by a certain class of persons shall be refunded to them does not have the effect of **exempting the property of such persons from taxation, so as to reduce the amount of taxable property upon which a limit of indebtedness is to be computed.**" (Emphasis ours.)

The cited authorities, therefore, do not in any way help the petitioner here. It urges further, however, that under the established procedure the valuations are made and equalized first, then the deductions are made; hence the "gross assessment" roll is the governing multiplicand. Section 12 of art. 1, of c. 66, Sess. Laws 1936 (Extra Session), provides in effect for two columns

of valuations on the assessment and tax rolls; "the tax roll shall show the total assessed valuation of each homestead and also the assessed valuation after the amount of exemption allowed has been deducted, and the assessment roll shall show the total assessed valuation of each homestead, the amount of exemption allowed, and the assessed valuation, less the exemption." The two columns of valuation are made necessary, of course, by the provisions of section 2 of the act (following the constitutional provisions upon which the act is based) whereby the exempt portion of each homestead valuation "shall be exempted from all forms of ad valorem taxation" so far as prospective taxation is concerned, but is not exempt so far as obligations incurred in the past are concerned.

Therefore, for past obligations—bonds and obligations incurred prior to the act—the valuation without the deductions must be taken as the multiplicand to determine the taxes for such obligations. But for new obligations the valuation, after deducting exemptions, must be taken as the multiplicand in determining current tax rates. It is seen at once that the higher valuation is usable only as to one kind of tax—sinking fund tax for obligations issued prior to the effective date of the law. The lower valuation, however, is the multiplicand for both general and sinking fund purposes. Because of the existence of these two valuation figures in our present assessments, we are asked to adopt a ratio basis whereby the amount in dollars and cents for which bonds may be issued can be determined by computing one part of the amount by multiplying the 5 per centum of the gross valuation by the ratio of the old gross debt to the total debt, and by computing the other amount of the debt by multiplying the 5 per centum of the net valuation by the ratio of the new debt to the total debt.

It is admitted that the application of this theory may result in perhaps shifting some burden of the tax for the proposed bond issue to those not having homestead exemptions, and that the formula may apply only to the first bond issue voted after the effective date of the homestead exemption law, leaving each successive issue to be worked out under a different formula. Such results should not be reached unless necessary. Furthermore, although the theory is interesting, we find no basis for it in the constitutional provision with which we are dealing. While the framers of the Constitution in adopting section 26 of article 10 probably did not have the exemption of homesteads in view, they evidently realized that valuations would fluctuate from year to year, hence fixed a standard or mathematical formula to be used in all cases looking towards a proposed indebtedness. The sum of existing indebtedness and the proposed bonded indebtedness must not aggregate more than 5 per centum of the valuation of the **taxable** property in the political subdivision seeking to become indebted. This valuation is to be ascertained from the last assessment for **state and county purposes.**

In the Missouri case first hereinabove referred to (Thornburgh v. School Dist. No. 3) it will be noted that the court, by excluding the value of the railroad property, confined the multiplicand to the valuations of property **against which taxes could be levied for the particular indebtedness to be incurred.** No good reason is urged why the same sort of rule should not be applied here. Furthermore, we do not believe that it can be said that an assessed valuation to be used only for a part of sinking fund levy purposes can be said to fulfill the constitutional requirement "for state and county purposes." This phrase must mean not merely the valuation for some state or county purpose, but must include for any county purpose; i. e., the valuation must be one that can be used in levying taxes, not for one, but for any of the various county purposes.

In the earlier Missouri case it is evident that the court construed the words "for county purposes" to refer to general levies for revenue purposes.

Since, in this state, cities, school districts, and other subdivisions have not been given the right to make their own assessments, the list made for county and state purposes is the valuation for city and school districts also, and is the governing assessment, "the standard by which the valuation was to be ascertained." In such a situation the South Carolina Supreme Court declared:

"Under the law as it now exists in this state governing the assessment of property for city taxes, no other assessment of such property for such taxation than the assessment of such property for the **purpose of levying taxes** for state and county purposes can exist." Todd v. City of Laurens, 48 S. C. 395, 26 S. E. 682.

In the Constitution of Alabama (section 7, art. 11, Const. 1875) is a provision limiting levies in any one year in municipal corporations to "one-half of one per centum of the value of such property as assessed for state taxation during the preceding year." Discussing this provision, the Alabama Su-

preme Court said, in Mayor, etc., v. Klein, 7 So. 386:

"By the very terms employed throughout the article, the taxes and taxation, whether state, county or municipal, are those which make up the general revenues of the one or the other political division, as the case may be,—revenues which come from all the property in the territory, and **go to defray general governmental expenditures,** as distinguished from special outlays to provide for purely local exigencies. With respect to section 7, this is made to appear with great clearness by its reference to the property to which the limitation it imposes is made to apply, and by its requirement as to the assessment upon which the municipal levy must be predicated. Not only is the levy by any city to be made 'on the property thereof,' i. e., the whole taxable property thereof, but it must be made on 'such property as assessed for state taxation during the preceding year.' * * * The state assessment upon which the only municipal levy treated of in the organic law is required to be based is a **general assessment of all property** within the corporate limits, and is intended, as the provisos to section 7 show, to provide a fund for the general expenses of the city government."

And it is, we believe, sound reasoning to say that fundamentally the tax lists are made for the purpose of furnishing a basis for raising the current or general revenues of the taxing division, and are not made primarily for sinking fund purposes. Conceivably at the beginning there would be no sinking fund levies to be considered. (Such conditions surely prevailed in a large number of political subdivisions.) In adopting section 26 of article 10, we have no doubt the people meant by the last assessment list for state or county purposes that list upon which was based the levy for the general or current governmental expenses of the state or county, the levy for raising revenues that "go to defray general governmental expenditures." Political subdivisions which have no present indebtedness, if such there be, will unquestionably have only the one assessment list to which they can look to determine the amount to which they can become indebted. The Constitution cannot mean two things. It does not say the assessment list last used for sinking fund purposes. We cannot extend its terms, though the application thereof may, as often in the past, seem to some somewhat too restrictive.

We conclude that the only assessment which can be properly considered as the one "for state and county purposes" is the assessment as it exists after deducting the homestead exemptions.

Since it is conceded that if this court should reach this conclusion the petition cannot be sustained, it is accordingly held that the writ must be denied.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY, WELCH, PHELPS, CORN, HURST, and DAVISON, JJ., concur.