(April Term, 1940)

WILLIAMS ET AL. v. SCHOOL DIST. NO. 32 IN
THE COUNTY OF FREMONT

(No. 2156; May 6, 1940; 102 Pac. (2d) 48)

2

For the plaintiffs, the question was submitted on the brief of *H. S. Harnsberger* of Lander.

4

For the defendant, the matter was submitted on the brief of *F. B. Sheldon, Jr.* of Riverton, Wyoming.

RINER, Chief Justice.

This cause is here upon a reserved constitutional question arising upon plaintiffs' petition for injunctive relief and a general demurrer thereto. The question is so framed as to present three interrogatories to which a response by this court is asked. The action was instituted in Fremont County and the question aforesaid has been duly certified by the district court of that county for our consideration.

Summarized the plaintiffs' petition is to the following effect: That plaintiffs are qualified electors and taxpayers in School District No. 32 located in the county above named, who bring the action in their own behalf and also in behalf of all others similarly situated; that the defendant is a corporate body organized and existing under and by virtue of the school laws of this State; that the Board of Trustees of defendant School District, at a special meeting held on September 5, 1939, through a resolution adopted by unanimous vote, submitted to the District's electors the question whether the Board should be authorized to issue the District's negotiable coupon bonds not to exceed $15,500 in amount, for the purpose of erecting a school building within said District, a copy of this resolution being attached to and made a part of the petition; that an election was held after legal notice had been given thereof, and the electors of the District voted to authorize said Board to issue these bonds; that by a resolution adopted by said Board, and likewise made a

6

part of the plaintiffs' petition, the sale of said bonds has been authorized, and unless restrained from so doing sale thereof will be made in the full sum of $15,500.

Subdivision VI of said pleading, after alleging that the defendant District is "without right or authority to issue and sell" said bonds in excess of $11,796.76 and that a sale thereof in excess of that amount will contravene the rights of plaintiffs and others similarly situated as defined by Section 5 of Article XVI of the Wyoming Constitution and "Section 99-102, Wyoming Revised Statutes 1931," (Section 99-1002), avers that this is so because, to quote verbatim,

"(a) The assessed valuations of all of the property in the District as shown by the last preceding general assessment for the year 1939 amounts to the sum of.............................................$329,181.71

"(b) There is included in the above amount, property in the District which has heretofore been sold for delinquent taxes thereon and purchased by Fremont County and appears in the combined assessment roll and tax list of Fremont County, Wyoming, for the year 1939 on the County property roll, having in all an assessed valuation of...................$ 69,899.00

"(c) The actual taxable property in the district within the meaning of the above Constitutional and Statutory provisions, as shown by the last preceding general assessment roll, therefore amounts to only the sum of ........................................................$263,282.79

"(d) Six per cent of this assessed       .06
valuation amounts to the sum  ——————
of .......................................................$ 15,796.96

"(e) On July 1, 1925, the District sold its bonds amounting to $7000.00 and of this issue, there is now and

was at the time of said bond election, bonds outstanding and unpaid amounting to the sum of..................$   4,000.00

"(f) Deducting the amount of the present outstanding bonded indebtedness of the District aforesaid leaves the balance for which the defendant District may issue and sell its bonds pursuant to said bond election, to-wit, the sum of......................$  11,796.96

The concluding subdivision of the petition, No. VII, asserts that the aforesaid Trustees are wrongfully including "the assessed valuation of property in the District which appears on the County property roll for the year 1939" and unless restrained, will sell the District's bonds in the beforementioned sum of $15,500, which is an amount in excess of the constitutional and statutory limitations above recited, and that plaintiffs "have no other, speedy and adequate remedy at law."

The prayer of the petition is that the defendant be restrained from issuing its bonds in excess of $11,796.96. In that connection we may note that it would seem that the computation of the sum last mentioned in the petition, as shown in the verbatim excerpt given above, is in some manner a mistake, the correct amount being, as we understand the pleading $11,556.96. However, this is a mere matter of proper clerical calculation.

The question arising upon this pleading and the general demurrer thereto is certified to be:

"Under the constitutional limitations of municipal debt imposed by Section 5 of Article XVI of the Constitution of the State of Wyoming, does the plaintiff School District have the right as a matter of law to issue additional bonds of the District for the purpose of erecting a school building therein, in the amount of $15,500.00 when the current outstanding bonded indebtedness amounts to the sum of $4,000.00 and all of the property in the district as shown by the last pre-

ceding general assessment for the year 1939 has an assessed value of $329,181.71 which included property in the district having an assessed value of $69,899.00 which has been sold at tax sale for delinquent taxes thereon and purchased by Fremont County and appears on the County Property roll in the combined assessment roll and tax list of Fremont County, Wyoming, the specific constitutional question being, do the words 'taxable property therein' as used in the above constitutional provision include all of the property in the plaintiff (defendant) district as shown by the last preceding general assessment regardless of the fact that part thereof has been sold for delinquent taxes, purchased by the County and appear upon the County property roll, or should such County property be excluded in determining the amount of the assessed value of the taxable property in the District?"

The constitutional provision and the statutory law primarily invoked are so far as pertinent here that portion of Section 5 of Article XVI of the Wyoming Constitution reading:

"No city, town or village, or any sub-division thereof, or any sub-division of any county of the state of Wyoming, shall, in any manner, create any indebtedness exceeding 2 per centum on the assessed value of the taxable property therein; * * * and provided further, that any school district may be authorized to create an additional indebtedness, not exceeding 4 per cent on the assessed value of the taxable property therein as shown by the last preceding general assessment, for the purpose of the erection or enlargement of school buildings therein * * *."

Sections 99-1001 and 99-1002 W. R. S., 1931, contain this language:

§ 99-1001: "The board of school trustees of any school district may, whenever a majority thereof so decide, submit to the electors of the district the question whether the board shall be authorized to issue the coupon bonds of the district to a certain amount, not to exceed two per cent. of the taxable property in said district, and bearing a certain rate of interest, not ex-

ceeding six per cent. per annum, and payable and redeemable at a certain time, not exceeding twenty-five years, for the purpose of building one or more school houses in said district, and providing the same with necessary furniture, and funding outstanding indebtedness evidenced by warrant or otherwise, against said district."

§ 99-1002: "The board of school trustees of any school district may, whenever a majority thereof so decide, submit to the electors of the district the question whether the board shall be authorized to issue the coupon bonds of the district to a certain amount, not to exceed four per centum on the assessed value of the taxable property therein as shown by the last preceding general assessment, and bearing a certain rate of interest, not exceeding six per centum per annum for the purpose of the erection or enlargement of school buildings therein, which said indebtedness may be incurred and said bonds issued in addition to those provided for in § 99-1001."

In connection with the foregoing section of our fundamental law and those sections of the statutory law which obviously follow it, another provision of the Wyoming State Constitution, as well as the statute enacted pursuant to it, together with certain of the legislative enactments of this State dealing with delinquent taxes and the disposition of lands affected thereby, may properly be here set forth either verbatim or definitely referred to as shedding light upon the reserved question at bar.

Section 12, of Article XV of the Wyoming Constitution declares that the property of counties, as well as other enumerated public property, "shall be exempt from taxation." Section 115-102 W. R. S., 1931, as amended by Chapter 24, Laws of Wyoming, 1935, is to the same effect.

Sections 115-2340, 115-2341, W. R. S., 1931 and Section 115-2342, W. R. S., 1931, as amended by Chapter 72 Laws of Wyoming, 1933, read respectively:

§ 115-2340: "At the tax sale each year ,in each

county of this state, any real estate that cannot be sold for the amount of taxes and cost of advertising due on the same, at the time of such sale, or on which no bids are offered, shall be bid in by the county treasurer for his county, and such county treasurer shall thereupon issue a certificate of purchase to said county."

§ 115-2341: "Real estate so bid in shall be assessed each year and taxes placed thereon the same as other real estate, but shall be placed by itself on a separate tax roll and assessment list, and the valuation of all such property shall not be reckoned as a part of the valuation of said county nor any return thereof be made to the state; provided, however, that a separate list of such properties, giving the values thereof, shall be sent, on the first Monday in July in each year, to the state board of equalization, as and for statistical information."

§ 115-2342: "After such real estate has been bid in by said county, the county commissioners of said county shall have authority to dispose of the same at any time, at either public or private sale. If sold at public sale, said commissioners shall have the right to reject any or all bids, and may continue to offer the same for sale, until the same shall be disposed of; provided, that if said property has not been disposed of prior to the expiration of four years after the date of sale to the county, the county treasurer shall issue a tax deed for said property to the county, which shall be recorded in the county clerk's office, and thereupon said board of county commissioners shall have authority to dispose of said property at private sale and cause a deed to be executed to the purchaser, and signed by its chairman and clerk."

The applicable portion of Section 115-2343 W. R. S., 1931, as finally amended by Chapter 37 Laws of Wyoming, 1937, contains this language:

"The original owner of any such real estate, so bid in by the county, shall have four years from the date of such purchase by the county in which to redeem the same from the county, or from anyone who purchases said property from the county, during said four-year period. If redeemed from the county, the price shall be the purchase price paid by the county, together with

the accrued costs up to the time of redemption and eight per centum per annum on such sum, together with the total amount of all taxes which have accrued after such sale; with interest on such accrued taxes at the rate of eight per centum per annum; if redeemed from a purchaser from the county the price shall be the amount for which the same was sold to the county, with three per cent. on same, with eight per cent. per annum on the whole amount from the date of sale to the county, and the amount of all taxes accrued thereafter, with eight per cent. interest per annum on such accrued taxes, unless such subsequent taxes have been paid by the person for whose benefit the redemption be made."

The three subsequent sections are as follows:

§ 115-2344. "Upon the sale of any such real estate to private parties by the county it shall be the duty of the county treasurer to immediately place such property on the general assessment roll of the county."

§ 115-2345: "The moneys derived from the sale of such real estate by the county shall be disposed of as follows: all such sums shall be paid pro rata in accordance with the amount assessed, for which property was sold, to the proper school district which may have had a special assessment during the year for which the property was sold, or to the proper city or town within which the property is situated which may have had an assessment for taxes during the year for which the property was sold, and the rest into the general fund of the county."

§ 115-2346: "All taxes upon the assessment rolls and tax lists in any county or of any incorporated town or city in the state, not collected and enforced for a period of ten years from the time that such taxes have been levied, shall stand cancelled upon the books and shall thereafter be uncollectible."

The problem to be solved is—what is indicated under the foregoing constitutional and statutory provisions by the language "taxable property therein as shown by the last preceding general assessment," this language being found in Section 5 of Article XVI of the Wyoming Constitution.

It is the contention of the School District that notwithstanding a certain amount of real property within its boundaries has been sold to the county and a certificate of purchase issued to said county, as provided by Section 115-2340 W. R. S., 1931, supra, of the laws of this State governing delinquent taxes, nevertheless, such property is to be regarded as included in the language last above quoted; also that Section 115-2341 W. R. S., 1931, supra, has "no bearing upon the constitutional debt limitation of a school district." In this connection it is argued further on behalf of said defendant School District: "Although the taxes on that particular property may not be immediately collected, still it eventually will have to bear its proportion of the burden of retiring the bonded debt, which places this property within the purpose of the constitutional limitation even though this property may not be redeemed by the present owners." We are unable to uphold these views for a number of reasons.

It may properly be here remarked that we may not overlook that, as above set forth, the Constitution of this State, as well as subsequent legislation, has by specific declaration to that effect, exempted from taxation the property of counties.

In Board of Commissioners of Custer County v. Board of Commissioners of Yellowstone County, 6 Mont. 39, 9 P. 586, the law relative to the apportionment of certain indebtedness as between Custer County and Yellowstone County in the State of Montana, the county last mentioned being a new one created by taking a portion of the former, the law provided that: "The indebtedness shall be divided between said counties in proportion as the taxable property in each county bears to the entire taxable property of the present county of Custer, taking as a standard thereof the assessment for the year 1882." One of the questions submitted to the court was whether the property of the

Northern Pacific Railroad, a corporation organized and established by an Act of the Congress of the United States, should be excluded from the assessment for the year 1882 in calculating the apportionment of the indebtedness of the respective counties. Holding affirmatively on the point, the court said:

"In our opinion the determination of this question depends upon the signification of the phrase 'taxable property' as it is used in the above connection. The word 'taxable' signifies: 'Liable to taxation'; 'something of value'; 'subject to assessment, and to be levied upon and sold for taxes.' The mere assessment of property does not make it taxable. In order to render property taxable there must be the fundamental right to assess. The property of the Northern Pacific Railroad Company mentioned in the complaint was not legally taxable. This property was not a part of the taxable property of either the old county of Custer, or of that county as constituted after the act, or the county of Yellowstone. * * * * * * This untaxable property should be excluded from the assessment, and the assessment, after such deduction and exclusion, made the basis of the apportionment."

Where (Laws of Oklahoma 1936-1937 Special Session, Sec. 2 of Article I of Chapter 66), the law provided,

"Homesteads, as defined in Section 1 hereof ,are hereby classified for the purpose of taxation as provided in Section 22, Article 10 of, and subsequent amendments to, the Constitution of the State of Oklahoma; and all homesteads in this State shall be assessed for taxation the same as other real property therein, except that each homestead, as defined in this Act, shall be exempted from all forms of ad valorem taxation to the extent of one thousand ($1,000.00) dollars of the assessed valuation thereof, as hereinafter provided, except that all assessments, levies, encumbrances, and other contract obligations incurred or made prior to the taking effect of this Act, shall in no way be affected or impaired by this Act,"

it was held in State ex rel Board of Education of Town

of Salina v. Williamson, 182 Okla. 97, 76 P. 2d 384, that under the Oklahoma constitutional provision prohibiting school districts from incurring an indebtedness in excess of five per cent of the valuation of the taxable property therein to be ascertained from the last assessment for state and county purposes (Okla. Constitution, Article 10, Section 26), the language "last assessment for state and county purposes" referred to the assessment list which formed the basis for the levy of general taxes of the county, and subsequent to enactment of the homestead exemption law above quoted, meant that assessment which excluded an amount deducted for homestead exemption.

Recurring to the statutory provisions governing the disposition of property in the counties of this State affected by the delinquent tax laws thereof, and having in mind the particular sections above referred to or recited verbatim, it appears that when a certificate of purchase has been issued to the county, the property which is thus obtained may be sold by the latter at "any time at either public or private sale." Section 115-2342 W. R. S., 1931, as amended supra. This right of sale vested in the county would appear to imply that in some respects at least the property was county property and in consequence of the constitutional declaration in Section 12 of Article XV of our fundamental law, exempt from taxation. If such property be not regarded as exempt from general assessment and taxation, then it would seem that such property could appropriately be advertised and resold for the taxes of subsequent years though still in the hands of the county. However, there appears not to be any law authorizing that to be done. It is true that Section 115-2341 W. R. S., 1931, supra, provides that property "so bid in" for the county by its treasurer shall "be assessed each year and taxes placed thereon the same as other real estate," but that section also segregates

such real estate and requires that it be placed "by itself on a separate tax roll and assessment list," and the definite declaration is then made by the section aforesaid that the valuation of all such property "shall not be reckoned as a part of the valuation of said county." A return of this property valuation to the State Board of Equalization is by the same section forbidden except for merely statistical information. It would appear from this that the State Board can do nothing with the assessed valuation so far as equalization procedure is concerned.

In Baker v. Paxton, 29 Wyo. 500, 215 P. 257, this court said:

"The State Board of Equalization is by law directed to examine the assessment rolls, equalize the valuation of property, and certify its action to the various county boards of equalization. The latter are directed to carry out the equalization as made by the state board. Nothing, we think, could more clearly prove that the action of the latter board is deemed to be one of the integral steps in the system of assessment, and that the roll is not deemed to be complete or final until it has been acted upon by that board."

That statement plus the specific requirement of Section 115-2344 W. R. S., 1931, supra, that such real estate when sold to "private parties by the county" shall be then put back on "the general assessment roll of the county" would appear to be of particular significance in shedding light upon the question before us. The inference therefrom is reasonably clear that before the property arrives in private ownership in consequence of a sale from the county, it may not be regarded as on the "general assessment" or a part of it within the language of Section 5 of Article XVI of the State Constitution recited above. Then there is also the requirement that the valuation of the property thus "bid in" for the county "shall not be reckoned as a part of the valuation of said county." It is not the province of

this court to add the words "but shall be reckoned as a part of the valuation of school districts," as would be necessary in order to reach the result the defendant seeks. If the valuation of this property is not a part of the valuation of the property in the county as an entirety, it is not easy to see, without legislation to that effect, that it should be regarded as a part of the valuation of subdivisions of the county, i. e., school districts.

When the provisions of Section 115-2341, supra, directing that the real estate "so bid in shall be assessed each year and taxes placed thereon the same as other real estate" are read in conjunction with those of Section 115-2343, W. R. S., 1931, as amended supra, it is apparent that the legislative purpose was to fix a price for the redemption of the property affected while that right existed which would include all back taxes, and thus require the original owner of the property to pay them in order to redeem from the tax sale. This, of course, was proper in order to do justice as between all landowners in the county.

It will be noted that the right to redeem on the part of such owner prevails for a number of years after the land has passed to tax sale, as is apparent from the above quoted portions of statutory law, such right existing not only when the property is in the hands of the county but even after it has been sold by the county to a private purchaser. See also Barrett v. Barrett, 46 Wyo. 84, 23 P. 2d 857. There, of course, comes a time when the redemption right is cut off. It is obvious that the exercise of the right of redemption is not obligatory on the part of the owner to whom the property was originally taxed, and it is likewise true that he may never exercise that right.

If we were to adopt the defendant's views, as outlined above, it may be noteworthy to observe that it concedes that the taxes on the property within its bor-

ders which has been sold for delinquent taxes and bid in for the county "may not be immediately collected." However, if bonds of the school district are nevertheless issued without regard for the property that has thus arrived in the hands of the county, we cannot readily see how that particular property will "eventually have to bear its proportion of the burden of retiring the bonded debt." In the event that such property is never redeemed and never resold by the county, what would happen then? The provisions of Section 115-2346 might perhaps appropriately be regarded as operative. Further, if the county receives a tax deed to the property as directed by Section 115-2342, W. R. S., 1931, as amended supra, and all right of redemption has been cut off, there is no sale price fixed, and the county may dispose of the property thus acquired for any price it sees fit, and even without realizing anything but an extremely small portion of all the back taxes which have accumulated against such property.

Again, it may be queried as to the ensuing consequences if a large portion of the taxes in the defendant district were to become delinquent and the property affected thereby be bid in for the county. Obviously extra burdens would be thrown upon those taxpayers who were conscientious enough and financially able year after year to pay their current taxes without default. As the record before us now stands, the defendant School District's financial status presents a situation disclosing that between twenty and thirty per cent of its taxable property already in the hands of the county due to delinquent tax sales is unredeemed and unsought by private ownership by purchase from the county. When this large percentage of property was purchased by the county, of course, it paid no money into the hands of the County Treasurer which could be used in reducing the district's existing indebtedness.

We consider, furthermore, that to inject the uncer-

tainties attendant upon redemption by original owners of their lands which have passed to delinquent tax sale and those involved in resales by the county into the underlying security of a bond issue, as urged upon us by the defendant district, is not a result of statutory construction which should be sought to be reached unless it is compelled by clear and unmistakable language requiring such a conclusion only. Neither a school district nor a county can afford to have its credit impaired by the issuance of obligations likely to be defaulted in the not distant future. In saying this we have not left out of view the necessities of the District for school facilities, as suggested in defendant's brief.

Due to the peculiar provisions of our delinquent tax laws, counsel state that they have been unable to find authoritative rulings from other states which would aid in the disposition of the matter in hand. We have made diligent search, but have been unable for the same reason to discover such decisions.

Accordingly, after a careful analysis of our statutory law affecting the question presented, we are therefore constrained, all things considered, to reach the conclusion that the valuation designated "(b)" in the paragraph quoted from plaintiffs' petition, supra, or $69,899.00, should be deducted from that indicated in paragraph "(a)", or $329,181.71, in the calculation of the amount of bonds permissible for School District No. 32 to issue under the constitutional limitation aforesaid. The reserved question certified, therefore, should be answered as to its first two inquiries in the negative, and that portion reading "or should such county property be excluded in determining the amount of the assessed value of the taxable property in the District," in the affirmative.

*Question answered.*

KIMBALL and BLUME, JJ., concur.