MILTON ZOBEL et al., appellants, v. ANTONE SCHAU, Mayor, Members of City Council and City of Ida Grove, appellees; LEAGUE OF IOWA MUNICIPALITIES, intervenor-appellee.

No. 52619.

(Reported in 150 N.W.2d 626)

MAY 2, 1967.

Bruce M. Snell, Jr., of Ida Grove, for appellants.

Daniel Williamson, of Ida Grove, for appellees.

Tyrrell M. Ingersoll, of Cedar Rapids, and Wendell B. Gibson, of Des Moines, for intervenor-appellee.

MASON, J.—Plaintiffs seek declaratory judgment and supplemental relief of injunction against defendants Ida Grove, a municipal corporation, its mayor and members of its city council. The intervenor, League of Iowa Municipalities, is a voluntary association composed of Iowa cities and towns.

The case arises out of a proposal of the city officials to issue general obligation bonds to pay for building a bridge in an amount not less than $25,000. From the relief granted defendants and intervenor, plaintiffs appeal.

I. The question for our determination is whether the value of assessed and listed moneys and credits which are not subject to taxation for the purpose of satisfying the bonded indebtedness of a taxing body may be included as "taxable property" in computing the debt limits of counties, cities, towns and school districts.

The facts are undisputed and both parties agree the findings of fact, conclusions of law and declaratory judgment and decree filed January 31, 1967, set out all admitted facts and determine all parties' claims for proper disposition of this appeal.

II. Plaintiffs are resident taxpayers owning property within defendant city which is subject to assessment and levy of taxes to pay general obligation bonds issued by defendant to pay construction costs of bridges or for other authorized public purposes.

A plat of a subdivision had been filed by the original proprietor with and approved by the Ida Grove city council as

an addition to the city. Defendant mayor and council members have initiated steps to construct a bridge leading into the addition, including the securing of preliminary surveys and cost estimates. Defendants plan to construct the bridge and issue general obligation bonds to pay all construction costs. Unless enjoined they will complete the bridge and issuance of general obligation bonds of the city to pay the costs thereof.

Actual value of taxable property within the municipality exclusive of moneys and credits is $5,404,030.

By reason of the enactment of chapter 360 (as amended by chapter 359), Laws of the Sixty-first General Assembly, moneys and credits of certain classes of owners were removed from assessment and taxation under the provisions of chapter 429, Code, 1966, but are taxable at the rate of one mill under Code section 35B.11.

The value of moneys and credits within defendant municipality remaining taxable at six mills is $675,817 and the value of moneys and credits taxable at one mill under Code section 35B.11 is $2,588,932.

The values of taxable property set forth in the foregoing paragraphs are ascertained from the last state and county tax list on file in the Ida County treasurer's office as transcribed by the auditor from the assessment rolls of the Ida County assessor for 1966 and are the values applicable to the determination of the debt limit of defendant municipal corporation as prescribed by section 3, Article XI of the Iowa Constitution, and Code sections 381.7 and 407.2.

The one-mill tax on moneys and credits of Ida Grove taxpayers is imposed and levied by the state under chapter 35B as a direct annual tax for payment of the Korean War Veterans Bonus Bonds now outstanding and for no other purpose. This one-mill tax is not levied to pay general obligation bonds of Ida Grove, Ida County, any school district of the state, any other obligation thereof or any obligation of any taxing district embraced within the territorial limits of Ida Grove, except the state. The total of moneys and credits in defendant city taxed at one mill are moneys and credits subjected to such a tax under chapter 35B, moneys and credits represented by pension and welfare

plans, etc., taxable at one mill under Code section 427.1, subparagraph 23, and moneys and credits represented by savings accounts and interest-bearing deposits taxable under Code section 429.14.

Total present indebtedness of Ida Grove is $282,000. If moneys and credits in Ida Grove taxable at one mill are included in their entirety, the debt-incurring capacity of Ida Grove is $433,438.95. If such moneys and credits are not included in this debt-incurring capacity the limitation would be $303,992.35. Adding the present indebtedness to the estimated cost of the bridge, the bonded indebtedness of defendant-corporation would exceed this limitation. If moneys and credits taxable at one mill under chapter 35B may be properly included in determining defendants' debt-incurring capacity, the proposed bonded indebtedness for construction of the bridge can be legally incurred.

III. Section 3, Article XI of the Iowa Constitution, provides:

"Indebtedness of political or municipal corporations. No county, or other political or municipal corporation shall be allowed to become indebted in any manner, or for any purpose, to an amount, in the aggregate, exceeding five per centum on the value of the taxable property within such county or corporation—to be ascertained by the last State and county tax lists, previous to the incurring of such indebtedness."

Plaintiffs contend the words "taxable property" should be construed as not including any property which is not taxable for city purposes and such property should not be included in computing the debt-incurring capacity of the city. To put it another way, they contend the only purpose of looking at the tax list is to establish values of the property which bear the obligation of satisfying bonded indebtedness.

Defendants and intervenor, on the other hand, contend the constitutional provision is plain and unambiguous; the property in Ida Grove taxable under 35B.11 is "taxable property" included in the last state and county list for 1966 within the meaning of the quoted section.

The trial court concluded that moneys and credits taxable at the rate of one mill under section 35B.11 should be included in

computing the debt-incurring capacity of Iowa taxing bodies as "taxable property" within the meaning of section 3, supra, and applicable statutes.

The trial court held that moneys and credits taxable at one mill within Ida Grove for the year 1966 pursuant to Code section 35B.11, and appearing on the tax list for 1966 in the amount of $2,588,932 are taxable property and are to be included in computing the debt-incurring capacity of Ida Grove within the meaning of section 3 and such moneys and credits are to be included in determining the debt-incurring capacity of Ida Grove under Code sections 381.7 and 407.2.

The court further held that moneys and credits taxable at one mill as provided by Code section 35B.11 within the counties or other political or municipal corporations in Iowa as ascertained from the last state and county tax list, are taxable property within the meaning, intent and purposes of section 3, Article XI of the Iowa Constitution, and the Code sections set forth.

IV. Plaintiffs state two propositions relied on for reversal. They are: (1) Property which is taxable only for a limited special state purpose and which does not in any way bear the burden of satisfying local bonded indebtedness is not taxable property within the intent and meaning of section 3, Article XI of the Iowa Constitution in computing the debt-incurring capacity of the city and other local taxing bodies; and (2) The construction of Article XI, section 3, Iowa Constitution, urged by defendants and intervenor results in the removal of any logical limitation on indebtedness from the constitutional provision.

Plaintiffs argue in support of their first contention that by reason of the Laws of the Sixty-first General Assembly the great bulk of Iowa moneys and credits was left subject to only the one-mill tax imposed for payment of the Korean War Veterans Bonus Bonds. This tax is, of course, a tax for a special purpose and none of the proceeds are devoted to the support of any other local taxing bodies. Therefore, so far as the county, city and school districts are concerned, this property is no longer taxable property. To them it is just as exempt as a church, a cemetery, or federal and state property. They urge that the quoted phrase "taxable property" means only property within Ida Grove which

will actually bear the burden of taxation to pay municipal indebtedness. This construction would thus exclude moneys and credits taxed to pay Korean bonds since this property will not bear any tax burden for municipal indebtedness.

Defendants argue all property on the tax list is to be included for debt limitation purposes even though only a part of it is taxed by the municipality. For this proposition defendants rely on Windsor v. City of Des Moines, 110 Iowa 175, 81 N.W. 476, 80 Am. St. Rep. 280. In that case, 110 Iowa, at 181, 81 N.W., at 478, appears the following:

"* * * Plaintiff contends that the indebtedness is limited to five per centum of the property subject to taxation for city purposes. We cannot agree with him in this contention. The state and county tax lists include all property in the corporate limits, whether taxable for city purposes or not."

Plaintiffs contend this statement cited in the trial court's opinion was not necessary to reach the decision that the contracts involved in this case were invalid; being unnecessary to the decision, it is in the nature of dictum and contrary to the decisions of other states where the question has been raised. Plaintiffs express doubt whether the court in Windsor would have reached the same decision if the matter had been carefully and thoroughly argued as the main proposition in the light of modern decisions and current tax posture.

Plaintiffs rely on Monroe County v. County Debt Commission, Ky., 247 S.W.2d 507, 30 A. L. R.2d 899. There the question was submitted to the voters of the county under a provision of the Kentucky Constitution whether to issue bonds in the amount of $60,000 to pay for a hospital building. The bond issue was approved by more than the necessary two-thirds majority. The Kentucky Constitution limits county indebtedness to an amount not exceeding 2% of the value of taxable property in the county. When the bonds were submitted to the finance officer pursuant to a Kentucky statute he found: 1. The assessed value of the property in the county subject to county tax levy was $4,061,990; 2. That 2% of this amount was $81,239.80; 3. That subtracting the outstanding debts of $34,350 left $46,889.80. Based on the

2% Constitutional limitation, the finance officer approved issuing bonds in an amount not to exceed $46,000.

The county insisted the value of farming and manufacturing machinery, livestock and intangibles should be included in the "value of taxable property in the county." This property was exempted from county taxes by Kentucky statutes. It was, however, subject to state taxation. This property had a value of $638,127 in the county. To include it would have raised the bond limitation from $46,000 to $56,000. The county argued it should be allowed to issue hospital bonds in the additional amount; the exemption was not constitutional but only statutory, and, therefore, it could be changed by the legislature at anytime. To this, the court answered that it must look at the exemption at the time the bonds will be issued and is not at liberty to consider future possibilities of whether the legislature will change the exemption. The court affirmed the decision of the finance officer that these properties, though taxable for state purposes, were not to be included in the constitutional phrase "value of taxable property in the county."

Regarding the question of what property is "taxable property in the county", the Court of Appeals stated (page 508 of 247 S.W.2d):

"* * * It is clear to us, as argued by appellees, that the framers of our Constitution in limiting the amount of indebtedness the county might incur to not exceeding 2% of the value of taxable property in the county, intended that the taxable property would bear the obligation of satisfying the bonded indebtedness. The property exempted under KRS 132.200 is taxable only for State purposes and as it cannot be taxed for the purpose of maturing these bonds, it cannot be included in the 'value of taxable property' in the county."

The court further declined to follow the Windsor case in the following language (page 509 of 247 S.W.2d):

"The Windsor case, 110 Iowa 175, 81 N.W. 476, 478, appears to support appellant's contention that all property within the limits of the city, whether taxable by it or not, should be included in the 'value of the taxable property' for the purpose of determining the debt limitation. Article 11, §3 of the Iowa Con-

stitution I. C. A. deals with debt limitation of counties, and other political subdivisions, and is practically the same as §158 of our Constitution. But this Windsor case appears out of harmony with the intent of the framers of §158 of our Constitution and we are not disposed to follow it. We think Williams v. School Dist. No. 32, 56 Wyo. 1, 102 P.2d 48, 54, and State ex rel. Harrington v. City of Pompano, 136 Fla. 730, 188 So. 610, 625, both of which hold that 'taxable property' for bond payment purposes does not include property exempted at the time the bonds were issued, are more in keeping with the purpose the framers of our Constitution had in mind when they wrote §158."

The Monroe case in 30 A. L. R.2d is followed by an annotation commencing at page 903. We do not find it cited further. No doubt the case supports plaintiffs' position, as previously noted, that the phrase "taxable property" means in this instance only property within Ida Grove which will actually bear the burden of taxation in paying the municipal indebtedness contemplated.

In Williams v. School Dist. No. 32, supra, cited in the Monroe case, real property within the taxing district which had been sold for delinquent taxes to the county and for which tax certificates had been issued, was held not to be included as "taxable property" in the school district for purpose of determining debt limitation. Although the property was assessed each year the same as other real property, no money was paid by the county into the treasurer which could be used in reducing the particular taxing district's indebtedness. Taxes were assessed merely for the purpose of fixing the amount for redemption. The property appeared on the county property roll in the combined assessment roll and tax list of Fremont County.

The Wyoming Constitution, as well as subsequent legislation, had by specific declaration, to that effect, exempted from taxation the property of counties. The specific constitutional question was stated to be, "* * * (D)o the words 'taxable property therein' as used in the above constitutional provision include all of the property in the plaintiff (defendant) district as shown by the last preceding general assessment regardless of the fact that part thereof has been sold for delinquent taxes, purchased by the

county and appear upon the county property roll, or should such property be excluded in determining the amount of the assessed value of the taxable property in the district?" (page 50 of 102 P.2d). The court answered the question by holding such county property be excluded.

However, since the enactment of chapter 63, Laws of the Thirty-fourth General Assembly, effective April 8, 1911, moneys and credits have been subject to a uniform tax throughout the state. Prior to the amendment by the Sixty-first General Assembly, referred to supra, Code section 429.2 provided in part: "Moneys, credits and corporation shares or stocks, * * * shall be assessed and * * * shall be taxed upon the uniform basis throughout the state of five mills on the dollar of actual valuation, same to be assessed and collected where the owner resides." This section first appeared as a part of section 1310, Code Supplement, 1913.

Moneys and credits have not borne the obligation of satisfying bonded indebtedness since 1911 because they have not been subject to levy for that purpose.

Section 429.3, Code, 1966, provides in part: "The millage tax provided for in section 429.2 shall be in lieu of all other taxes upon moneys and credits and shall be levied by the board of supervisors, placed upon the tax list and collected by the county treasurer, * * *."

In Mack v. Independent Sch. Dist. (1925), 200 Iowa 1190, 1192, 206 N.W. 145, 146, in determining whether a bond issue created indebtedness of the school district in excess of the constitutional limitations, we held moneys and credits are to be included within the term "taxable property" as used in the Constitution. The court felt bound by its earlier decision in McLeland v. Marshall County (1924), 199 Iowa 1232, 1252–1254, 201 N.W. 401, 408–409, in determining the question adversely to plaintiff's contention.

In that case plaintiff contended the authorization of the bond issue at an election was void because it exceeded the legal limit of indebtedness for the county. The principal claim was that moneys and credits should not be included when determining the actual value of taxable property within the county.

There was no dispute as to indebtedness of the county at the time of election and the assessed value of real and personal property, exclusive of moneys and credits, and including moneys and credits. It was conceded that if moneys and credits of the county be included in determining the actual value of the taxable property the legal limit of indebtedness would not be exceeded by the bond issue.

Debt limitation of section 43, chapter 237, Laws of the Thirty-eighth General Assembly, later section 312.8, 1946 Code, was being considered.

We held the proposition that moneys and credits cannot be considered "taxable property" within the meaning of the Act there under consideration was not correct and that requiring levy on moneys and credits to be placed upon the tax list made them includable when determining the value of taxable property within the county. We determined the term "taxable property within such county" used in the Act under consideration must mean the same as the term "taxable property" used in the Constitution.

Division VIII of the opinion with which we are not here concerned was withdrawn from the case appearing in 201 N.W. 401 and a substituted division appears in 203 N.W. 1.

In McKinney v. McClure, 206 Iowa 285, 289, 220 N.W. 354, 356, when considering section 6043 of the 1924 Code, which has since been repealed, we said:

"* * * Taxable property is property that may be taxed,— property which is not exempt from taxation. Its exemption from taxation for 'any city or town purpose' does not take it out of the classification or designation of 'taxable property,' anymore than exception of moneys and credits from liability to taxation under Section 6043 would take that class of property out of the general connotation of 'taxable property.' "

V. We believe there is merit and logic in the court's position in Monroe County v. County Debt Commission, and Williams v. School District No. 32, both supra, and in plaintiffs' contentions. However, we feel bound by the prior decisions of this court interpreting the phrase "taxable property." The decree of the trial court is—Affirmed.

MOORE, STUART, RAWLINGS and BECKER, JJ., concur.

GARFIELD, C. J., and LARSON, J., dissent.

SNELL, J., takes no part.

GARFIELD, C. J.—I respectfully dissent. In my opinion moneys and credits which may be taxed only to the extent of one mill for payment of Korean War Veterans Bonus Bonds issued by the state and for no other purpose, and which will bear none of the obligation of satisfying the city's bonded indebtedness it is now proposed to incur, are not, in any practical or realistic sense, taxable property within the city, as the term is used in Article XI, section 3, Iowa Constitution.

I would reverse.

LARSON, J., joins in this dissent.