WILLIAM C. HARNEY et al., appellants, v. CLEAR CREEK
COMMUNITY SCHOOL DISTRICT et al., appellees.

No. 52690.

(Reported in 154 N.W.2d 88)

316

NOVEMBER 14, 1967.

Messer & Cahill, of Iowa City, for appellants.

Hart, Shulman, Phelan, Tucker & Boyle, of Iowa City, for appellees.

BECKER, J.—Plaintiffs, taxpayers and voters of Clear Creek Community School District of Johnson and Iowa Counties, asked for a permanent injunction restraining defendants, school district, board of directors and board members individually, from selling bonds, entering into contracts for the purchase of school site and construction of school building, claiming bond election was illegal and void because defendants did not comply with certain statutory provisions.

The question presented is: Were the variances from statutory procedures in this instance material and substantial? The trial court refused to grant the injunction, holding the variances were merely technical and inconsequential. We agree.

On September 1, 1961, pursuant to chapter 275, Code, 1958, parts of Johnson and Iowa counties were united to form the school district. Five elections on school bond issues were held between March 14, 1962, and October 27, 1965. All failed.

The sixth bond election was predicated on a petition submitted to the board on December 13, 1965. It posed the following proposition:

"Shall the Clear Creek Community School District, in the Counties of Johnson and Iowa, State of Iowa, issue bonds in such amount as would be obtainable under

the 1965 assessed evaluation of property within the school district which amount can be determined from County Auditor records when the same are completed, for the purpose of building and furnishing a new high school on approximately 25 acres of land located in the E ½ of the SW ¼ of Section 28, Township 80 North, Range 7 West of the 5th P.M."

On December 23, 1965, the board adopted a resolution authorizing a vote on the proposition. It was similar to the petition except the resolution failed to specify part of the proceeds would be used to purchase a site for a new high school. Subsequent to the board's resolution and prior to the time of publication of notice of special election, the figures on assessed valuation were available from the county auditor's office. The percentage of total indebtedness was computed on this valuation and the amount of the bond issue was determined from these figures to stay within the constitutional five percent limitation. The dollar amount was incorporated into the notice of the election and placed on the official ballot.

Legal notice of the May 3, 1966, bond election was published stating the proposition:

"Shall the Clear Creek Community School District, in the Counties of Johnson and Iowa, State of Iowa, issue bonds in the amount of Five hundred sixty-three thousand four hundred seventy-three Dollars ($563,473) for the purpose of securing the site and building and furnishing a new high school on approximately 25 acres of land * * *" (location proposed same as in the petition, supra).

The proposition submitted to the voters on the official ballot was identical to that set out in the published notice of election. The election was held on May 3, 1966. A total of 1048 ballots were cast. There was a 62.5 percent majority vote in favor of the proposition. No ballots were shown to be blank or defectively marked.

I. Before considering ten propositions relied upon by plaintiffs we review the general principles of interpretation governing this type of case. In Honohan v. United Community

School District, 258 Iowa 57, 59, 137 N.W.2d 601, we observed, "As a general rule mere irregularities in the conduct of a school election or minor defects in the form of a ballot do not affect the result of the election, but defects in matters of substance are fatal." (Cases cited.)

The result of a school election is presumptively valid. Irregularities in the procedure must be shown to be material. In Headington v. North Winneshiek Community School District, 254 Iowa 430, 438, 117 N.W.2d 831, these propositions are stated more fully and forcefully including, "[I]t is the duty of the court to sustain an election authorized by law if it has been so conducted as to give a free and fair expression of the popular will * * *."

Plaintiffs rely strongly upon Honohan v. United Community School District, supra. We note that there the petition, resolution, notice and preliminary plans and all public debate referred to a school for eight grades, five through twelve. When the ballot appeared it referred only to construction of a senior high school, connoting at most a four grade building, nine through twelve. Under such circumstances this court held the voters had in fact been misled and voided the election. We now examine the irregularities appearing here.

II. The petition failed to specify the amount of the bonds in dollars but substituted therefor the request that the amount of bonds be determined in such amount as would be obtainable under the 1965 valuation of property within the district as shown by the auditor's records when the same were completed. The auditor's records for 1965 were not then in shape to allow accurate determination of the amount of bonded indebtedness available to the district.

Subsequently, and before the notice of election was published, the total amount, $563,473, was determined and included both in the published notice and the ballot. Defendants cite State ex rel. Fletcher v. Executive Council, 207 Iowa 923, 223 N.W. 737, where formula type legislation for a highway bond issue was considered and use of a formula rather than a specific amount was approved. The case was reversed. One of the grounds was that the formula was bad. We need not deter-

mine whether use of the formula in the notice of election and subsequent ballots would be sufficient compliance with the statute here. The amount of the bond issue was determined in dollars in sufficient time to inform the people adequately by those two instruments both before the election and at the polls. The voters were not misled.

III. The preamble of the petition contains reference to the fact that improvements contemplated cannot be made within the limit of one and one-quarter percent of the assessed valuation of the taxable school district property. This complies with section 296.2 Code, 1966. No statute requires that such statement be added to the school board resolution. A resolution is not specifically required. While orderly procedure probably dictates such a resolution, it is not a statutory condition precedent.

IV. Plaintiffs next note that the petition for election was filed less than six months after the last previous election. Again there is no statute prohibiting such procedure. Section 75.1 requires that a defeated proposal, or part thereof, "shall not be *submitted* to the electors for a period of six months from the date of such regular or special election." (Emphasis supplied.) It is the actual submission that is prohibited; not the preparatory petition and administrative work. Plaintiffs concede that the facts and decision in Gibson v. Winterset Community School District, 258 Iowa 440, 138 N.W.2d 112, are contra to their position. There new elections were repeatedly *prepared* within six months of prior defeat but not *submitted* until after six months had elapsed. The issue was between contending petitions. Implicit in the opinion is that only the actual voting must be separated by six months. We concur in the controlling effect of Gibson adverse to plaintiffs' position.

V. Plaintiffs next lump three objections in one. The essence of the objections is that both the petition and resolution failed to specify the proceeds of the bond issue were to be used to purchase a site for the high school. The notice of election and the ballots did state that the proceeds would be used "for the purpose of securing the site and building and furnishing a new high school." Thus there was both a failure to inform at the

petition and resolution·level and a variance between the first two documents and the last two documents. Plaintiffs deem both irregularities (if they be such) substantial. We cannot agree.

■ The property to be used was described by legal description. Well before the election, i.e. at the time the legal notice was published, it was clearly stated part of the funds would be used to *acquire* a site. As stated in Honohan v. United Community School District, supra, "While the public measure need not always be set forth *'in haec verba'*, there must still be substantial compliance with the relevant statutes." Here there was substantial compliance.

■ VI. Plaintiffs complain that the ballots instructed the voters to mark the appropriate box with an X. The statute now allows a mark be either X or a check, section 49.47. The statutory deviation is not commendable but there is no showing that it affected the election or its results. No ballots are shown to have been spoiled or rejected. The deviation under the record here is merely technical.

■ VII. Plaintiffs argue the proposal to acquire 25 acres as a site is clearly in violation of section 297.2, Code, 1966, which limits school property to ten acres for schoolhouses "except as hereinafter provided." Section 297.3 provides any district which includes a city, town or village may take and hold an area not exceeding two blocks *and* an area not exceeding thirty acres for school playground, stadium or field house, or other purposes for each site. Plaintiffs do not argue applicability of section 297.4.

Description of the voting precincts indicates three of the four precincts include towns; namely the towns of Oxford, Cosgrove and Tiffin, all in Johnson County. The entire 25-acre tract is within the town of Tiffin. The district therefore qualified for the application of section 297.3.

■ The details of how the acreage will be used need not be set forth in the petition, notice or ballot. No statute requires such detail. There is need to have these instruments short enough for general understanding of the project proposed but detailed enough for intelligent exercise of the voter's franchise. The statute allows acquisition of more than the proposed 25 acres. If the board attempts to use the acreage illegally such action can

be the subject of other litigation. It is not germane to this election contest.

■ VIII. The petition was filed December 13, 1965. A meeting was called and held on December 22 for the purpose of considering the petition. Action was postponed to check legality of the petition. On the following day, December 23, at a second meeting resolution approving the petition was adopted. Section 4.1(23), Code, 1966, provides: "Computing time—legal holidays. In computing time, the first day shall be excluded and the last included, * * *."

St. Paul Mercury Indemnity Co. v. Nyce, 241 Iowa 550, 563, 41 N.W.2d 682, states: "But this court, in computing periods of time fixed by statute or by proceedings thereunder, has uniformly complied with the statutory method, unless contrary to legislative intent."

Using these rules the board meeting was timely held. We need not consider whether the provision was mandatory or directory. In either event it was met. See State ex rel. Carstens v. Miskimins, 247 Iowa 39, 72 N.W.2d 571.

■ IX. We are also told that because some nine persons lived in an area later annexed were unable to vote on issue resulting in later tax to their property the election was void. This proposition was, as plaintiffs concede, decided adversely to them in Peterson v. Swan, 231 Iowa 745, 2 N.W.2d 70. Further the number of votes affected could not have changed the result even if they were all negative. See 26 Am. Jur.2d, Elections, section 277.

■ X. Finally, it is said that the bond issue will raise the total debt to more than five percent constitutional limitation. The facts indicate the contrary. The computation was made on the value of the property in Johnson County. Moneys and credits were not included. Zobel v. Schau, 260 Iowa 796, 150 N.W.2d 626, would indicate that they could have been included. The indebtedness was well within the constitutional limit.

The electorate has determined the matter. We find no irregularities such as would justify interference under our well established rules.—Affirmed.

All JUSTICES concur.